353 So.2d 874 (1977)
George S. JOHNSEN, Appellant,
v.
Edward CARHART, Appellee.
No. 76-2149.
District Court of Appeal of Florida, Third District.
December 20, 1977.
*875 Millar & Lally and Al Millar, Jr., Jacksonville, for appellant.
Greenberg, Traurig, Hoffman, Lipoff, Quentel & Wright and Alan T. Dimond, Miami, for appellee.
Before HUBBART and KEHOE, JJ., and CHARLES CARROLL (Ret.), Associate Judge.
CHARLES CARROLL
This appeal is by the plaintiff below, from an order dismissing the amended complaint in his libel action against an Assistant State Attorney of Dade County.
The question involved is whether the trial court was correct in determining, on the amended complaint and its exhibit, that the matter was within the absolute privilege of the defendant official. We hold the ruling of the court was correct, and affirm.
The plaintiff and three other police officers of the City of Miami were convicted of a certain crime or crimes involving moral turpitude. Thereafter, when they were under consideration for reemployment or reinstatement in the police department of the City of Miami, the defendant, who had conducted the prosecution at the trial, and who was an official of the executive department of government, with the position and title of Executive Assistant State Attorney of Dade County, sent a letter in his said capacity and under his official letterhead to the Chief of Police of the City of Miami with carbon copies to the Mayor and Members of the City Commission. The letter suggested, because of the result of the trial and the conduct of the officers at the trial, their unfitness for reinstatement. Included were statements that the officers had lied in testifying at their criminal trial. The trial principally had involved alleged misconduct by the officers with a former prostitute who was the complaining witness. The references in the letter to lying by the plaintiff officer at the trial were as follows:
"I suggest these men willfully testified falsely in their own behalf and in general conducted themselves in a fashion which clearly mocked the integrity of the Miami Police Department and the criminal justice system of this community.
* * * * * *
"I would also point out that your own Investigators had the former prostitute in this matter polygraphed by one Warren Holmes and as a result of that and their own investigation, are satisfied of her verasity which necessarily means that the defendants in this case have willfully lied throughout the legal proceedings."
The amended complaint, to which the letter was made an exhibit, alleged the defendant Carhart "was acting beyond the scope of authority" in that in so acting the defendant did not have authority or permission of the State Attorney; that there had been no request therefor by the Chief of Police of the City of Miami; that the functions of the State Attorney's office did not "embrace the representation or participation in disciplinary proceedings within the City of Miami Police Department"; and that the said action of the defendant was "not connected to, incident, antecedent, or precedent to any function that he performed in the prosecution of the plaintiff" (in the circuit court criminal case). The plaintiff alleged injury resulted, humiliation, damage to reputation and loss of reinstatement.
The defendant's motion to dismiss the amended complaint was for its failure to state a cause of action, on the ground of immunity because of claimed absolute privilege of the defendant as to the matter involved. After hearing thereon the court entered an order dismissing the amended complaint, and this appeal ensued.
*876 In stated accord with the great weight of authority which recognizes no distinction between executive officers of government and judicial or legislative officers of government on the question of immunity, and following the ruling of the Supreme Court of the United States in Barr v. Matteo, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959) that the same absolute immunity which the courts had theretofore universally extended to the legislative and judicial branches of government should be accorded to those in the executive branch, the Supreme Court of Florida, in McNayr v. Kelly, 184 So.2d 428 (Fla. 1966), held as follows:
"In summary, we hold that executive officials of government are absolutely privileged as to defamatory publications made in connection with the performance of the duties and responsibilities of their office to the same extent as such absolute immunity is afforded to members of the legislative and judicial branches of government."
In McNayr v. Kelly, supra, in a footnote, the Court quoted the language of Judge Learned Hand in Gregoire v. Biddle, 177 F.2d 579, 581 (2nd Cir.1949) which the Supreme Court of the United States had adopted in Barr v. Matteo, supra. We view that language and the reasoning and statement of the law which it supplies to be of sufficial legal import and bearing on this case to justify repeating it here, viz:
"It does indeed go without saying that an official, who is in fact guilty of using his powers to vent his spleen upon others, or for any other personal motive not connected with the public good, should not escape liability for the injuries he may so cause; and, if it were possible in practice to confine such complaints to the guilty, it would be monstrous to deny recovery. The justification for doing so is that it is impossible to know whether the claim is well founded until the case has been tried, and that to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties. Again and again the public interest calls for action which may turn out to be founded on a mistake, in the face of which an official may later find himself hard put to it to satisfy a jury of his good faith. There must indeed be means of punishing public officers who have been truant to their duties; but that is quite another matter from exposing such as have been honestly mistaken to suit by anyone who has suffered from their errors. As is so often the case, the answer must be found in a balance between the evils inevitable in either alternative. In this instance it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation. * * *
"The decisions have, indeed, always imposed as a limitation upon the immunity that the official's act must have been within the scope of his powers; and it can be argued that official powers, since they exist only for the public good, never cover occasions where the public good is not their aim, and hence that to exercise a power dishonestly is necessarily to overstep its bounds. A moment's reflection shows, however, that that cannot be the meaning of the limitation without defeating the whole doctrine. What is meant by saying that the officer must be acting within his power cannot be more than the occasion must be such as would have justified the act, if he had been using his power for any of the purposes on whose account it was vested in him. * * *"
By the foregoing, it is shown that the absolute immunity of such an official operates to relieve him from the necessity of being subjected to trial of an action based on his privileged conduct, notwithstanding that a complaint for libel which is filed against him may allege, as a conclusion, that he is without such immunity or was acting beyond the scope of his duty or office, where, as in this case, the complaint and its exhibits disclose the action of the official was taken in the interest of the *877 public good and thereby within the scope of his duties and responsibilities, notwithstanding the allegations in the complaint to the contrary.
Thus in McNayr the libel action was disposed of on motion to dismiss. There, as basis for the libel action, the complaint disclosed a written instrument, of alleged libelous content, made by the defendant, the County Manager of Dade County, delivered to the County Commissioners, informing them of the reasons why the defendant had terminated the services of the plaintiff, the Sheriff of Dade County. On motion of the defendant, the complaint was dismissed. The Supreme Court upheld the dismissal of the action at that stage of its progress, upon concluding from the complaint and the instrument upon which it depended that while the County Manager was under no duty or requirement to so inform the County Commissioners, it was in their interest and in the public interest that it was done, and therefore was absolutely privileged.
In point is the decision of the Supreme Court in Hauser v. Urchisin, 231 So.2d 6 (Fla. 1970). See also: Saxon v. Knowles, 185 So.2d 194 (Fla. 4th DCA 1966); Roberts v. Lenfestey, 264 So.2d 449 (Fla. 2nd DCA 1972).
Here the letter sent by the defendant to the Miami Police Chief was the basis of the action. It shows it was written in furtherance of the public good. In law enforcement in Dade County there is an official kinship of the State Attorney's office, the County and Municipal police departments. For example, the police of the City of Miami make arrests for violations of State laws and laws or ordinances of Metropolitan Dade County, as frequently if not more frequently than for violations of City ordinances. City of Miami police who make arrests for State or County law violations are necessarily involved in investigation and the prosecution of such offenders by the State Attorney.[1]
Since the letter which is challenged as libelous shows on its face the action of the defendant official of the executive department of government was not for invidious or ulterior motive but patently was something done for the public good and for the purpose of benefiting and enhancing the proper prosecution of criminal offenses, we have no problem in concluding that the trial judge was eminently correct in recognizing the immunity conferred by law on the defendant official, and in dismissing the amended complaint.
Affirmed.
NOTES
[1] Bearing on this feature the defendant's letter contained the following:

"After hearing the testimony of David Bethel, George Johnsen, Dennis Valdez, and Jesse Causey it is my firm opinion that these men have little respect for the oath to tell the truth in Court and I intend to urge the State Attorney to instruct his Assistants not to vouch for the credibility of these men as witnesses on behalf of the State without rigid scrutiny of their testimony on a case by case basis."