676 So.2d 447 (1996)
John R. ALFINO, Appellant,
v.
DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, etc., et al., Appellee.
No. 95-0623.
District Court of Appeal of Florida, Fifth District.
May 17, 1996.
Rehearings Denied July 17, 1996.
*448 John R. Alfino, Howey-in-the-Hills, pro se.
Robert A. Butterworth, Attorney General, and Laura Rush, Assistant Attorney General, Tallahassee, and Belle B. Turner, Assistant Attorney General, Daytona Beach, for Appellees.
ANTOON, Judge.
John R. Alfino appeals the trial court's final order dismissing with prejudice his defamation suit against the Department of Health and Rehabilitative Services (HRS), and two of its employees, Ester Tibbs and Robert Froeman. We affirm.
Mr. Alfino's complaint explains that he was employed by HRS as a Child Protective Investigator from March 1989 until August 1992. During that same time Ester Tibbs and Robert Froeman were also employed by HRS. Ms. Tibbs was the Deputy District Administrator for HRS, and Mr. Froeman was an Operational Program Administrator. The complaint alleges that "with knowledge of falsity, reckless disregard for the truth, and negligence, defendants caused to be published and widely distributed statements which were false and defamatory." The complaint continues that "in committing the acts alleged ... [Tibbs and Froeman] were at all times acting under the color of office, but were also acting contrary to the duties of their respective offices." The statements to which the complaint refers were attached as exhibits to the complaint and included:
(1) A letter written by Ms. Tibbs, on HRS letterhead, to the union representing Mr. Alfino regarding a grievance proceeding initiated by Mr. Alfino. The letter contained the statement that "... it is alleged that [Alfino] engaged in criminal conduct which could have resulted in criminal felony charges...";
(2) Two HRS Performance Appraisals which were signed by Mr. Froeman as "reviewer"; and,
(3) Two interoffice memoranda on HRS letterhead signed by HRS employee, Thomas R. McKay, which contain written reprimands concerning Mr. Alfino's alleged falsification of records and negligent use of the "unit sign-out log".
Upon review of motions to dismiss filed by the defendants, the trial court dismissed Mr. Alfino's complaint, ruling that the defendants were entitled to immunity from suit because the alleged defamatory statements were made in connection with the performance of their duties as government employees.
On appeal, Mr. Alfino contends that the trial court erred in two respects. First, he argues that HRS and its employees are not entitled to immunity from suit for defamatory communications made in the scope of the employee's duties. Second, he argues that the trial court erred in ruling on the defendant's dismissal motions before discovery was completed. We conclude that both arguments lack merit.
In McNayr v. Kelly, 184 So.2d 428 (Fla.1966), our supreme court ruled that executive officials of the government possess an *449 absolute privilege from liability with regard to defamatory statements made in connection with the performance of their duties. This principle was based upon the rationale that high-ranking government officials should be able to perform the duties of office unfettered by the fear of lawsuits. It was not immediately clear just how far down the chain of command this privilege extended, but in City of Miami v. Wardlow, 403 So.2d 414 (Fla.1981), the court adopted the view set forth in Cripe v. Board of Regents, 358 So.2d 244, 245 (Fla. 1st DCA), cert. denied, 365 So.2d 710 (Fla.1978), that the controlling factor in deciding whether a public employee is absolutely immune from actions for defamation is whether the communication was made within the scope of the officer's duties. Accordingly, in order for our courts to determine whether immunity applies in any given lawsuit, it is necessary to determine whether the alleged defamatory communication was made within the scope of the government employee's employment.
Conduct is within the scope of one's employment if it is the type of conduct which the employee is hired to perform, the conduct occurs substantially within the time and space limits authorized or required by the work to be performed, and the conduct is activated at least in part by a purpose to serve the employer. Craft v. John Sirounis and Sons, Inc., 575 So.2d 795 (Fla. 4th DCA 1991). Applying these standards to the allegations set forth in Mr. Alfino's complaint, it was obvious to the trial court that the privilege applied to the defendants in this case. In this regard, the exhibits attached to the complaint enabled the trial court to ascertain the context in which the communications were made, to whom the communications were made, and why the communications were made. By Mr. Alfino's own allegations, the defamatory statements were made by the defendants within the scope of their government employment.
There was also no error in the trial court's decision to dismiss Mr. Alfino's complaint prior to the conclusion of discovery. The purpose of filing a motion to dismiss is to ask the trial court to determine whether a complaint fails to state a cause of action. In making this determination the trial court is permitted only to consider the allegations set forth in the complaint. Odham v. Foremost Dairies, Inc., 128 So.2d 586 (Fla.1961). Thus, it is not relevant whether discovery has been completed at the time the motion is heard.
AFFIRMED.
HARRIS, J., concurs.
W. SHARP, J., concurs specially, with opinion.
W. SHARP, Judge, concurring specially.
This court, as an intermediate court of appeal, is bound by the Florida Supreme Court's opinion in City of Miami v. Wardlow, 403 So.2d 414 (Fla.1981).[1] However, I suggest that it may be time to re-examine that precedent. Most state courts in this country do not grant absolute immunity in defamation cases to mid-level and lower ranking employees of state government agencies for statements made during the course of and in the scope of their employment. See Prosser and Keeton on Torts at 821 (5th ed. 1984). In doing so, Florida is out of step not only with the Restatement (Second) of Torts § 591 and 598A, but also with the basic purpose for which the English common law fashioned the concept of "absolute immunity."
Absolute immunity was confined to very few situations. These included legislative and judicial proceedings and executive communications by certain executive officers. In England, this category of officers was and still is limited to the highest ranking officials only.[2] In the United States, absolute immunity is generally accorded to superior officers of the executive department and branches of the federal government, and the highest ranking officers of state government.[3]
The rationale for absolute immunity is that, on balance, it is necessary to ensure the *450 efficiency of government by protecting policy-forming executive officials in the execution of their duties.[4] But this is a drastic rule of law. It permits no remedy to a person who is injured by a statement made and published by such an official, even though the statement is false, and the publisher of the statement knew it was false at the time it was made, and made it with the intent to injure or damage the reputation of the person about whom the statement was made. As Prosser notes, absolute immunity affords a golden opportunity for unscrupulous politicians to abuse their positions and inflict outrageous injury on helpless innocents, for the worst kind of motives. "It can scarcely be said that our governments, state or federal, have always been so free of scoundrels as to inspire confidence in such a rule." Prosser at 823. And with the recent growth in the number of employees of both state and federal government agencies, the granting of absolute immunity to all such employees who make statements in the course of their employment, has expanded this privilege and denial of remedies to those injured, exponentially.
In this case, a libel suit was brought by an employee of a state agency, the Department of Health and Rehabilitative Services, against a deputy district administrator of that agency, and against an operational program administrator of the agency. These were not high-ranking officials by any means, nor were they in policy-making positions. The claimed libels were generated by a letter written by the assistant deputy to the union, which represented the plaintiff/employee while he was working at the Department, concerning a grievance he had filed. The other claimed libels were allegedly contained in two job performance appraisals of the plaintiff, which were signed by the administrator. There is obviously no important public function involved in any of these publications, which I submit, should be the basic underpinning for the grant of absolute immunity.
Alfino's complaint sufficiently alleged that these publications were made with the publisher's knowledge of the falsity of the statements and reckless disregard for the truth, and that they were made with the intent to defame and injure the plaintiff, and for other corrupt motivations. He further alleged that the defendants abused any privilege they may have had, that they abused their authority and office, and that they conspired to injure and harass him. The publications accused Alfino of having engaged in criminal conduct which could have resulted in criminal felony charges, and of falsifying records. Since this case was resolved by the trial court's granting the defendant's motion to dismiss the complaint, we must assume that the allegations of the complaint as pled by Alfino, are true.[5] The trial court granted the dismissal and this court is affirming, solely on the ground that the defendants were acting within the scope of their duties when making the defamatory statements.
For this level of state employees, I can perceive no reason to accord them absolute immunity for defamatory statements made in the course of their employment. They should be held to the same standard as employees in the private sector. Under such circumstances, they would be entitled to a qualified privilege for defamatory publications made in the course of their employment.[6] Defamatory publications are granted a qualified privilege when they are made by a person in the discharge of some public or private duty, whether legal or moral, or in the conduct of his own affairs, in matters where his interest is concerned. But the privilege is lost if it is made with knowledge of the falsity or with reckless disregard for its truth, or if the publication is too broad.[7]
Adoption of a qualified privilege for defamatory publications made by middle to lower ranking state employees, such as the defendants in this case, would adequately protect *451 their ability to discharge their duties as state employees, and would afford a remedy to a person who has been maliciously and intentionally injured.
The Restatement (Second) of Torts provides:
§ 598A Inferior State Officers
An occasion makes a publication conditionally privileged if an inferior administrative officer of a state or any of its subdivisions who is not entitled to an absolute privilege makes a defamatory communication required or permitted in the performance of his official duties.
§ 599 General Principle
One who publishes a defamatory matter concerning another upon an occasion giving rise to a conditional privilege is subject to liability if he abuses the privilege.
§ 600 Knowledge of Falsity or Reckless Disregard as to Truth
Except as stated in section 602, one who upon an occasion giving rise to a conditional privilege publishes false and defamatory matter concerning another abuses the privilege if he (a) knows the matter to be false, or (b) acts in reckless disregard as to its truth or falsity.
§ 602 Publication of Defamatory Rumor
One who upon an occasion giving rise to a conditional privilege publishes a defamatory rumor or suspicion concerning another does not abuse the privilege, even if he knows or believes the rumor or suspicion to be false, if
(a) he states the defamatory matter as rumor or suspicion and not as fact, and
(b) the relation of the parties, the importance of the interests affected and the harm likely to be done make the publication reasonable.
In my view, the Restatement has got it right by according only a qualified privilege to middle to lower-ranking employees of state government for defamatory statements. Such a privilege is adequate to protect their ability to function, but allows an innocent party a remedy in situations where the publisher has abused his or her office by making the statement, and there is no good public policy reason to shield them from liability for a wrongful and malicious act. Although it has not been mentioned in this context, article I, section 21 of the Florida Constitution, which provides for access to the courts, appears in conflict with the expansion of absolute immunity in this context.
Although I concur with the majority, I would certify[8] to the Florida Supreme Court the question of whether or not the common law of this state continues to grant to middle and lower ranking employees of state government an absolute immunity for defamations made in the scope of employment.
NOTES
[1] Hoffman v. Jones, 280 So.2d 431 (Fla.1973).
[2] Prosser at 821.
[3] Prosser at 821.
[4] Harper and James on Torts, Vol. 11 at 196.
[5] Pate v. Threlkel, 661 So.2d 278, 280 (Fla.1995); Connolly v. Sebeco, 89 So.2d 482, 484 (Fla.1956); Hernandez v. Amisub, 659 So.2d 1316 (Fla. 3d DCA 1995).
[6] Prosser at 825; Harper and James at 196.
[7] Harper and James at 198; Prosser at 825.
[8] Fla.R.App.P.9.030(a)(2)(A)(v).