DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**MARY M. CAMERON, Ph.D.,**
Appellant,

v.

**NICOLE A. JASTREMSKI, Ph.D.,**
Appellee.

No. 4D17-39

[April 25, 2018]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Cheryl A. Caracuzzo, Judge; L.T. Case No. 50-2016-CA-005118-XXXX-MB.

William R. Amlong, Karen Coolman Amlong and Isha Kochhar of Amlong & Amlong, P.A., Fort Lauderdale, for appellant.

Oscar E. Marrero and Lourdes E. Wydler of Marrero & Wydler, Coral Gables, for appellee.

GROSS, J.

This is an appeal from an order granting a motion to dismiss based on absolute immunity in a defamation action between two teaching colleagues at a local university. We reverse because appellee's entitlement to claim absolute immunity does not appear on the face of the complaint. Rather, *in this case*, the issue is one of proof, which may be raised at a limited evidentiary hearing or on summary judgment.

On an appeal from an order granting a motion to dismiss, we take the factual allegations of the complaint as true and consider them in the light most favorable to the plaintiff. *See, e.g., Palm Beach-Broward Med. Imaging Ctr., Inc. v. Cont'l Grain Co.*, 715 So. 2d 343, 344 (Fla. 4th DCA 1998).

As alleged in her complaint, Mary Cameron is a senior member of the anthropology department at Florida Atlantic University ("FAU"). Nicole Jastremski is a visiting instructor of anthropology and an unsuccessful candidate for a tenure-track position as an assistant professor at the

university.  Following Jastremski's rejection for the position, she sent a letter to the dean complaining about a series of derogatory statements Cameron made to Jastremski about her fellow professors and the department.  Jastremski also shared these statements with the department secretary, other colleagues in the department, and a former colleague who teaches at the University of Miami.

Cameron denied making any of the statements attributed to her.

Cameron filed a single count complaint for defamation against Jastremski.[1]  Jastremski moved to dismiss the complaint, asserting she was entitled to absolute immunity as a matter of law because her actions were within the scope of her duties as a public employee.  The circuit court granted the motion.

We have previously described an absolute privilege:

> "[A]bsolute privileges" are based chiefly upon a recognition of the necessity that certain persons, because of their special position or status, should be as free as possible from fear that their actions in that position might have an adverse effect upon their own personal interests.  To accomplish this, it is necessary for them to be protected not only from civil liability, but also from the danger of even an unsuccessful civil action.  To this end, it is necessary that the propriety of their conduct not be inquired into indirectly by either court or jury in civil proceedings brought against them for misconduct in their position.  Therefor[e] the privilege, or immunity, is absolute and the protection that it affords is complete.  It is not conditioned upon the honest and reasonable belief that the defamatory matter is true or upon the absence of ill will on the part of the actor.

*Cassell v. India*, 964 So. 2d 190, 193 (Fla. 4th DCA 2007) (quoting *Fridovich v. Fridovich*, 598 So. 2d 65, 68 (Fla. 1992)).  "In Florida, '[p]ublic officials who make statements within the scope of their duties are absolutely immune from suit for defamation.'"  *Id.* (quoting *Stephens v. Geoghegan*, 702 So. 2d 517, 522 (Fla. 2d DCA 1997)).  As explained by the

---

[1] Because this case was dismissed on the ground of absolute immunity, that is the only issue we address in this opinion.  We do not reach the issues of whether the complaint sufficiently states a claim for defamation or whether qualified immunity may apply.

Fifth District in *Alfino v. Dep't of Health & Rehab. Servs.*, 676 So. 2d 447, 449 (Fla. 5th DCA 1996):

> Conduct is within the scope of one's employment if it is the type of conduct which the employee is hired to perform, the conduct occurs substantially within the time and space limits authorized or requested by the work to be performed, and the conduct is activated at least in part by a purpose to serve the employer.

(citing *Craft v. John Sirounis & Sons, Inc.*, 575 So. 2d 795 (Fla. 4th DCA 1991)). "The scope of an officer's duties is to be liberally construed." *Cassell*, 964 So. 2d at 194 (citing *Goetz v. Noble*, 652 So. 2d 1203, 1205 (Fla. 4th DCA 1995)). "The term 'duties' is not confined to those things required of the officer, but rather extends to all matters which he is authorized to perform." *Id.* at 194 (citing *Stephens*, 702 So. 2d at 523; Restatement (Second) of Torts § 591).

Absolute immunity rests on the lofty principle that officials who are carrying out service to the public

> should be free to exercise their duties unembarrassed by the fear of damage suits in respect of acts done in the course of those duties—suits which would consume time and energies which would otherwise be devoted to governmental service and the threat of which might appreciably inhibit the fearless, vigorous, and effective administration of policies of government.

*Barr v. Matteo*, 360 U.S. 564, 571 (1959).

We reject Cameron's argument that absolute immunity does not extend to "rank-and-file employees" like Jastremski. "Originally, the protection was afforded only to high-ranking officials, but over time, courts began focusing less on the rank of the official and more on the nature of the employee's duties." *Boggess v. Sch. Bd. of Sarasota Cty.*, No. 8:06-CV-2245-T-27EAJ, 2008 WL 564641, *5 (M.D. Fla. Feb. 29, 2008) (citing *City of Miami v. Wardlow*, 403 So. 2d 414, 416 (Fla. 1981)); *accord Skoblow v. Ameri-Manage, Inc.*, 483 So. 2d 809, 810 (Fla. 3d DCA 1986) ("[T]he emphasis has shifted to the 'nature of the officer's duties rather than the level of his rank.'") (quoting *Wardlow*, 403 So. 2d at 416). And this court has written that "an absolute privilege protects the statements of *all* public officials, regardless of the branch of government or the level of the official." *Cassell*, 964 So. 2d at 194 (emphasis added). Instead, "the controlling

issue in deciding whether a public employee is absolutely immune from actions for defamation is whether the communication was within the scope of the employee's duties." *Skoblow*, 483 So. 2d at 810-11 (citing *Wardlow*, 403 So. 2d at 416).

The majority of employment-related defamation cases where Florida courts have found the existence of an absolute privilege generally involve a public official exercising supervisory responsibilities over another public employee or over personnel matters. It is well-settled that "absolute immunity protects public officials for statements made 'in connection with an employee's discharge . . . if the official has responsibility for discharging the employee.'" *Prins v. Farley*, 208 So. 3d 1215, 1217 (Fla. 1st DCA 2017) (quoting *Lock v. City of W. Melbourne Fla.*, No. 6:12-cv-680-Orl-36TBS, 2015 WL 1880732, *27 (M.D. Fla. April 24, 2015)); *see also Hauser v. Urchisin*, 231 So. 2d 6 (Fla. 1970) (city commissioner's statements to the press in response to former city prosecutor's comments after removal were absolutely privileged); *Cassell*, 964 So. 2d at 196 (police lieutenant entitled to absolute immunity because his statements about a police officer were "part and parcel of his duties as [the police officer]'s supervisor and as a ranking officer accountable to other officers either in the chain of command or in positions of responsibility over potential claims for benefits."); *Skoblow*, 483 So. 2d at 811 (officials' statements to the press about plaintiff's work were absolutely privileged); *Danford v. City of Rockledge*, 387 So. 2d 967 (Fla. 5th DCA 1980) (absolute immunity applied where city officials made unfavorable statements to the news media about a city police officer); *cf. Albritton v. Gandy*, 531 So. 2d 381 (Fla. 1st DCA 1988) (holding that statements about plaintiff's employment were not privileged where the official was not in charge of hiring or firing).

Florida courts have also found that statements by a public official are made within the scope of his or her duties if they involve an important public function or further the interest of the public good. For example, in *Wardlow*, a police captain called a job applicant's former employer at another police department to inquire about the applicant's background. 403 So. 2d at 415. In response to the inquiry, the former employer made statements that the applicant considered to be slanderous. *Id.* No administrative rule required the former employer to explain the circumstances under which the applicant left his job. *Id.* at 416. At the time of the applicant's departure, the former employer was personally involved in the investigation of accusations against the applicant. *Id.* In determining that this communication was within the scope of the former employer's duties and covered by absolute immunity, the Florida Supreme Court wrote:

> [W]hile the communication at issue here was privately made, as distinguished from the situation in *Barr v. Matteo*, we perceive that an important public function was involved. [Former employer]'s job involved attempting to ensure that no unfit persons were allowed to serve as police officers in the City of Miami. An ancillary function, but very important to the public, would be to communicate the results of his department's investigations to inquiring officials from another municipal police department.

*Id.*; *see also Palm Beach Cty. Health Care Dist. v. Prof'l Med. Educ.*, 13 So. 3d 1090 (Fla. 4th DCA 2009) (director of district's trauma agency, which funded educational seminars for county health care workers, acted within the orbit of his duties as "caretaker of public funds" when he wrote letter to organization that had oversight over medical training courses); *Mueller v. The Fla. Bar*, 390 So. 2d 449, 451 (Fla. 4th DCA 1980) (holding that Florida Bar employee acted within the scope of his authority in disseminating a press release about a disbarred attorney because doing so was "in the interest of the public good and therefore absolutely privileged."); *Fla. State Univ. Bd. of Tr. v. Monk*, 68 So. 3d 316, 316 (Fla. 1st DCA 2011) (finding that state university enjoyed absolute immunity from defamation suit for releasing report of academic misconduct investigation because "[t]he nature of the charges . . . and the fact that FSU is a public university made release of the investigation report necessary."); *Johnsen v. Carhart*, 353 So. 2d 874, 877 (Fla. 3d DCA 1977) (holding that state attorney who had prosecuted plaintiff and subsequently sent an allegedly defamatory letter to the police department expressing his reservations about the plaintiff's fitness to serve as a policeman was immune from defamation liability because he acted "in furtherance of the public good.").

Jastremski claims that she acted within the orbit of her responsibilities as a public university instructor because her statements were made to aid her supervisor with authority over personnel, and to promote a healthy working environment. Yet, there is no allegation in the complaint that Jastremski was acting within the scope of her duties in passing along Cameron's supposed negative comments about coworkers and the department administration.

The face of the complaint does not support the conclusion that Jastremski's conduct fell within the scope of her duties as a visiting instructor. The primary function of a college professor is teaching students. It has been said that President James Garfield described the

ideal college as "Mark Hopkins[2] on one end of a log and a student on the other." This epigram identifies the heart of a university as the student-professor relationship. However, Jastremski did not pass along criticisms of Cameron's relationship with students. It is difficult to see how the orbit of an instructor's responsibilities is so broad that it encompasses passing along gossipy repetition of a professor's critical comments of her department and the dean. Like Socrates, a gifted teacher may not always get along with the powers that be. A university is not a totalitarian state where criticism of a superior is strictly verboten.

On remand, Jastremski should have the chance to demonstrate by proof that the orbit of her responsibilities included the conduct here at issue. For example, she might present evidence of the common practice at FAU or policies contained in a university manual. Even if such proof exists, we are hard-pressed to see how Jastremski's statements to the department secretary and a professor at a completely different university are entitled to absolute immunity.

Our remand in this case is similar to the third district's treatment of an absolute immunity issue in a recent case. In *Del Pino-Allen v. Santelises*, the plaintiff, a college professor, sued her colleague for defamation arising out of statements the defendant made to the administration of the college. 43 Fla. L. Weekly D427a (Fla. 3d DCA Feb. 21, 2018). The plaintiff claimed that the defendant made the defamatory statements in retaliation for plaintiff's criticism of mistakes purportedly made by the defendant in part of the textbook that they were working on together. *Id.* The appellee moved to dismiss the complaint "based on his alleged status as a 'public official' entitled to absolute immunity," and the trial court granted the motion. *Id.*

On appeal, the third district reversed, finding that appellee's claim of absolute immunity was "not discernible from the four corners of the complaint and applicable precedent at this procedural juncture." *Id.* In reaching this conclusion, the court stated that the complaint failed to "establish that [appellee]'s allegedly defamatory statements all were made within the course and scope of his supervisory or other duties and some special position or status." *Id.* (citing *Cassell*, 964 So. 2d at 193-94). Further, the Court noted, "Factual issues outside the four corners of the complaint may crystallize such matters as the scope of [appellee]'s duties . . . and the basis for characterizing a professor at [the college] as a 'public official.'" *Id.* The court ultimately reversed and remanded for reinstatement of the complaint and for further proceedings, finding that

---

[2] Mark Hopkins was the president of Williams College from 1836-1872.

appellee failed to establish a basis for dismissal on a motion to dismiss. *Id.*

As in *Santelises*, while "factual issues outside the four corners of the complaint may crystallize such matters as the scope of [Appellee]'s duties," Jastremski has failed to demonstrate her entitlement to absolute immunity at this juncture. Accordingly, we reverse and remand for reinstatement of the complaint and further proceedings.

*Reversed and remanded for proceedings consistent with this opinion.*

WARNER AND CONNER, JJ., concur.

\*　　　\*　　　\*

***Not final until disposition of timely filed motion for rehearing.***