# Third District Court of Appeal

## State of Florida

Opinion filed February 27, 2019.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D18-1896
Lower Tribunal No. 16-29615
_____

**Isabel del Pino Allen,**
Appellant,

vs.

**Juan Santelises,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Dennis Murphy, Judge.

Isabel del Pino Allen, in proper person.

Allen, Norton & Blue, P.A. and Luke Savage, for appellee.

Before FERNANDEZ, SCALES, and MILLER, JJ.

MILLER, J.

Appellant, Isabel del Pino Allen, appeals the trial court's order granting final

summary judgment in favor of appellee, Juan Santelises, based upon the application

of absolute immunity. For the reasons that follow, we conclude that the statements forming the basis for Allen's action are cloaked in absolute immunity, thus we affirm.

## FACTUAL BACKGROUND

In 2013, Allen, then a faculty member at Miami-Dade College ("MDC") collaborated with four other MDC professors, including Santelises, to write a book entitled "The Freedom to Communicate." Early the following year, Allen alleged she discovered plagiarism within the book and the matter was reported to MDC's Office of Academic and Student Affairs. MDC placed Allen and her co-authors on notice that it intended to investigate the plagiarism accusations. In August of the same year, MDC concluded its investigation and determined the allegations were unsubstantiated.

Shortly thereafter, two of Allen's co-authors, Adam Vellone and Cherie Cannon, filed charges of discrimination and harassment against Allen, pursuant to MDC's administrative grievance process, with MDC's Office of Equal Opportunity Programs/ADA, Title IX Director, Joy Ruff, Ph.D. In the charges, Vellone and Cannon alleged that Allen directed hostile, discriminatory, and retaliatory acts at several MDC professors, including themselves and the other co-authors of "The Freedom to Communicate."

Ruff initiated an administrative investigation of the complaints, in accord with the grievance procedure delineated in MDC's Procedure Manual. During the investigation, Santelises was identified by the complainants as a material witness. Ruff interviewed Santelises regarding his observations. At the conclusion of her investigation, Ruff determined the charges of discrimination and retaliation were substantiated and Allen was eventually terminated from her employment with MDC. Following the termination, Allen filed the instant suit, alleging the interview responses provided by Santelises in the grievance investigation were slanderous.

Santelises filed a motion for final summary judgment, alleging three bases for the application of absolute immunity: (1) the statements were made during an administrative investigation; (2) Santelises was required to participate in the investigation by MDC; and (3) the statements made were in the course and scope of Santelises's duties as a professor at MDC. The trial court granted final summary judgment. This timely appeal followed.

**LEGAL ANALYSIS**

"A trial court's entry of a final summary judgment is reviewed *de novo*." Burton v. MDC PGA Plaza Corp., 78 So. 3d 732, 733 (Fla. 4th DCA 2012). "Summary judgment is proper only if there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law." Yardum v. Scalese, 799 So. 2d 382, 383 (Fla. 4th DCA 2001), citing Volusia Cty. v. Aberdeen at

Ormond Beach, L.P., 760 So. 2d 126, 130 (Fla. 2000). "Where no genuine issue of material fact is shown to exist, the only question for the appellate court is whether the summary judgment was properly granted under the law." Id., citing Wesley Constr. Co. v. Lane, 323 So. 2d 649, 650 (Fla. 3d DCA 1975).

"Whether allegedly defamatory statements are covered under absolute privilege is a question of law to be decided by the court." Ball v. D'Lites Enters., 65 So. 3d 637, 638 (Fla. 4th DCA 2011), citing Resha v. Tucker, 670 So. 2d 56, 59 (Fla. 1996) and Cassell v. India, 964 So. 2d 190, 193 (Fla. 4th DCA 2007).

"Public officials who make statements within the scope of their duties are absolutely immune from suit for defamation." Stephens v. Geoghegan, 702 So. 2d 517, 522 (Fla. 2d DCA 1997). The Florida Supreme Court explicated upon this protection in Hauser v. Urchisin, 231 So. 2d 6, 8 (Fla. 1970), finding:

> The public interest requires that statements made by officials of all branches of government in connection with their official duties be absolutely privileged. Under our democratic system the stewardship of public officials is daily observed by the public. It is necessary that free and open explanations of their actions be made.

"Originally, the protection was afforded only to high-ranking officials, but over time, courts began focusing less on the rank of the official and more on the nature of the employee's duties." Cameron v. Jastremski, 246 So. 3d 385, 388 (Fla. 4th DCA 2018) (quoting Boggess v. Sch. Bd. of Sarasota Cty., No. 8:06-CV-2245-T-27EAJ, at *5 (M.D. Fla. Feb. 29, 2008), see also Skoblow v. Ameri–Manage, Inc., 483 So.

4

2d 809, 810 (Fla. 3d DCA 1986) ("[T]he emphasis has shifted to the 'nature of the officer's duties rather than the level of his rank.'") (citation omitted). Thus, "an absolute privilege protects the statements of *all* public officials, regardless of the branch of government or the level of the official," if the statements are made in conjunction with official duties. Cameron, 246 So. 3d at 388, citing Cassell, 964 So. 2d at 194 (emphasis supplied); City of Miami v. Wardlow, 403 So. 2d 414 (Fla. 1981) (holding that the controlling factor in deciding whether a public employee enjoys absolute immunity is whether the communication was made within the scope of the employee's duties); Cripe v. Bd. of Regents, 358 So. 2d 244, 245 (Fla. 1st DCA 1978) (stating that a state university employee enjoyed absolute immunity in a defamation proceeding founded upon statements set forth in evaluations, as to hold otherwise would allow "[a]n employee who was dissatisfied with his rating [to] sue and the already overburdened taxpayers [to] become burdened again with additional governmental expenses to pay.").

Here, Santelises's employer, Miami-Dade College is a public institution organized under section 1004.65, Florida Statutes (2018). Thus, as a member of the faculty, Santelises enjoys the status of a public official. See Cameron, 246 So. 3d 385 (classifying a professor at Florida Atlantic University as a public official, but reversing the dismissal of a defamation complaint in the absence of allegations that the comments giving rise to the action were made in the scope of employment); see

5

also Fla. State Univ. Bd. of Trs. v. Monk, 68 So. 3d 316, 319-20 (Fla. 1st DCA 2011) ("Inasmuch as producing and publishing the report were part of its official duties, FSU, an executive branch entity. . . enjoys absolute immunity from a defamation suit seeking damages for those acts.").

Thus, we turn our analysis to whether the statements giving rise to the instant action were "within the orbit of [Santelises's] responsibilities as a public [college] instructor." Cameron, 246 So. 3d at 389. MDC's Manual of Procedure sets forth a Discrimination and Harassment Grievance Process. The Manual provides: "**ALL COLLEGE EMPLOYEES ARE EXPECTED TO REPORT ANY HARASSMENT OR DISCRIMINATION THAT THEY OBSERVE, HAVE HEARD ABOUT, OR BELIEVE MAY BE OCCURRING.**" The Manual sets OEOP/ADA as the "initial point of contact" for all complaints relating to employees. The Manual also delineates a "Formal Complaint Process." The Formal Complaint Process provides, in relevant part:

> **As a condition of employment, employees of the College are required to cooperate with these types of investigations by providing truthful and complete information**. It is the College's expectation that the employee will answer all questions and provide any knowledge he or she possesses that may be helpful to the inquiry. **Employees who refuse to answer questions related to their employment, are subject to discipline, up to and including termination of employment.**

(Emphasis supplied). The directive further requires compliance with collective bargaining agreement policies and procedures.

6

Article 4, Section 3 of the Collective Bargaining Agreement between the United Faculty of Miami-Dade College, Local 4253, FEA, AFT, AFL-CIO and the District Board of Trustees of Miami-Dade College (the "CBA") states:

> The College reserves the right to conduct an investigation into any allegation of misconduct or any alleged violation of this Agreement. **All bargaining unit members are required to cooperate with the College's investigation.**

(Emphasis supplied).

Here, the unambiguous terms of both the Manual and CBA demanded the cooperation of Santelises, a material witness to the allegations of harassment, as a condition of his employment. Under these circumstances, Santelises's cooperation could not be deemed voluntary, thus, it is axiomatic that the statements were made within the scope of his employment duties. See Forman v. Murphy, 501 So. 2d 640 (Fla. 4th DCA 1986) (holding that a police officer was entitled to absolute immunity for statements made pursuant to a duty imposed by the police department's manual).

As the statements forming the basis for slander in the instant action are utterances by a public official, compelled by his employer under the terms of his employment and during an administrative grievance process, we conclude absolute immunity precludes civil liability. Accordingly, we affirm the final order granting summary judgment.

Affirmed.

7