# Third District Court of Appeal

## State of Florida

Opinion filed August 24, 2022.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D21-2413
Lower Tribunal No. 19-32153
_____


**City of Miami, et al.,**
Petitioners,

vs.

**David Rivera, et al.,**
Respondents.


A Writ of Certiorari to the Circuit Court for Miami-Dade County, Migna Sanchez-Llorens, Judge.

Victoria Méndez, City Attorney, and Kerri L. McNulty, Senior Appellate Counsel, and Bryan E. Capdevila, Assistant City Attorney, for petitioners.

Lawton Law, PLLC, and Lindsey Lawton (Tallahassee), for respondents.


Before SCALES, HENDON and MILLER, JJ.

HENDON, J.

The petitioners, City of Miami ("City") and its fire chief, Joseph Zahralban ("Chief Zahralban") (collectively, "Petitioners"), seek certiorari review of the trial court's order denying their motion to dismiss several counts for defamation alleged in the First Amended Complaint ("amended complaint") filed by three City firefighters, David Rivera, Kevin Meizoso, and Justin Rumbaugh (collectively, "Respondents"). We grant the petition and quash the portion of the order denying the Petitioners' motion to dismiss the defamation counts as they are barred by absolute immunity.

## I. FACTS AND PROCEDURAL HISTORY:

The underlying action stems from an incident that occurred at a City fire station in September 2017, where a Black City firefighter discovered that his family photos had been defaced with phallic images and also found a string—shaped like a noose—draped over one of his family photos. Following an investigation by the City of Miami Police Department, the City terminated six firefighters, including the three Respondents.[1]

Following their termination, the Respondents filed suit against the City and Chief Zahralban. The Respondents' amended complaint alleged, among other things, as follows. On the evening of September 8, 2017, during Shift A, Lt. Sese directed a group of eleven or twelve firefighters,

---

[1] The three firefighters were terminated by the City, but they proceeded to arbitration and were later reinstated.

2

including the Respondents, to draw phallic images on the family photos of another lieutenant, Lt. Webster, who was not present at the fire station.[2] On the morning of September 9, 2017, the Respondents' shift ended, and they left the fire station. On September 10, 2017, during Shift B, someone placed the noose over one of the defaced photos, and the Respondents were not present when this occurred and do not know who placed the noose over the defaced photo.

Upon discovering the defaced photos and the noose on September 10, 2017, Lt. Webster reported the incident. At Chief Zahralban's request, the City of Miami Police Department investigated the incident, and generated a report, indicating that the drawing of the phallic images on the family photos and the placing of the noose over one of the photos were two separate incidents, separated by days and employees. Further, the Respondents' involvement, if any, was limited to drawing the phallic images on the photos, and there was no evidence that they, directly or indirectly, caused the noose to be placed over one of the defaced photos. In addition to the investigation conducted by the City's police department, Assistant Chief Robert Jorge also investigated the matter and generated an administrative report, finding that the defaced photos and the noose were

_____

[2] The amended complaint alleges that Rivera did not participate in defacing the photos, and attempted to discourage others from doing so.

3

the result of two separate events.

On November 1, 2017, the City terminated the Respondents. The Respondents' termination letters referenced the defaced photos, but not the noose.

The amended complaint references two communications made by Chief Zahralban—a written press release on November 2, 2017, and an oral statement made at a press conference on November 3, 2017. The written press release states, in part, as follows:

> On September 9th, 2017, a member with the City of Miami Fire Rescue was a victim of a hideous, distasteful act of hate in one of our fire stations. This Lieutenant of 17 years with the department, discovered his family photos were defaced with lewd and sexually explicit renderings and a noose draped over one [of] the photos. This was immediately reported to my staff and as a result, I personally responded to the station. Appalled by my observation, I immediately requested the Miami Police Department investigate the matter and temporarily transferred all personnel assigned to that station, per our department policy.
>
> During the investigation, findings determined eleven (11) personnel had some involvement with the incident and they were relieved of duty. Additional evidence discovered identified six (6) of those individuals directly involved and swift administrative action was implemented.
>
> Under my authority, a Captain, a Lieutenant and 4 firefighters were terminated for offenses surrounding egregious and hateful conduct.

The Respondents alleged that the second paragraph was false because

4

there were two separate incidents, not one as indicated in the highlighted paragraph, and the Respondents were not, directly or indirectly, involved with the placement of the noose over one of the defaced photos. In addition to Chief Zahralban's statement, the press release included the termination letters, photos of the terminated firefighters, and photos of the noose draped over one of Lt. Webster's family photos with his family members' faces redacted. The press release, however, did not include the police report or the administrative report, which indicated that the defacing of the photos and the draping of the noose were two incidents, separated by days and employees. Further, the Respondents alleged that during the press conference held on November 3, 2017, Chief Zahralban described the defacing of the photos and the draping of the noose as a single event. Thus, based on Chief Zahralban's written and oral statements, the Respondents alleged they were falsely portrayed as racists who were responsible for placing the noose over the defaced photos, causing them irreparable harm.

In the amended complaint, the Respondents alleged the following counts against the City or Chief Zahralban: Count I—Defamation (Libel) against the City as to Rivera; Count II—Defamation (Slander) against the City as to Rivera; Count III—Defamation (Libel) against Chief Zahralban as

5

to Rivera; Count IV—Defamation (Slander) against Chief Zahralban as to Rivera; Count V—Defamation (Libel) against the City as to Meizoso; Count VI—Defamation (Slander) against the City as to Meizoso; Count VII—Defamation (Libel) against Chief Zahralban as to Meizoso; Count VIII—Defamation (Slander) against Chief Zahralban as to Meizoso; Count IX—Defamation (Libel) against the City as to Rumbaugh; Count X—Defamation (Slander) against the City as to Rumbaugh; Count XI—Defamation (Libel) against Chief Zahralban as to Rumbaugh; Count XII—Defamation (Slander) against Chief Zahralban as to Rumbaugh; and Count XIII—Declaratory Relief, in the alternative as to the other counts alleged against the Petitioners, as to the Respondents' rights relating to, among other things, the withholding of a redacted administrative report and police report following the public records requests made by the Respondents, and requesting that the trial court make a declaration that the Respondents "did not place the Noose Shaped String over the Marked-Up photos so that in the future, should they seek employment in another department, they have a Court Order that proves they did not place the Noose Shaped String Over the Marked-Up Photos," and that the "Defendants withheld the truth from the public."

The City and Chief Zahralban filed a motion to dismiss the amended

complaint. They asserted the following arguments: (1) Counts I through XII must be dismissed because Chief Zahralban and the City have absolute immunity for all statements made by Chief Zahralban; (2) in the event Counts I through XII are not dismissed, Counts III, VII, and XI should be dismissed because they are duplicative of Counts I, V, and IX; (3) Count XIII must be dismissed, arguing, among other things, that (a) seeking declaratory relief under section 86.011, Florida Statutes, the Respondents must allege doubt as to the existence of a legal right, and under that statute, the trial court does not have the authority to make factual findings; (b) under the public records statutes (Chapter 119), the Respondents may file a declaratory action asking the court to declare rights pursuant to the public records disclosure, but may not ask the court to make findings as to whether the Respondents placed the noose over the photos when that finding is completely unrelated to the issue of the public records disclosure; and (c) the Respondents have proceeded to arbitration for their terminations, and copies of the reports were turned over to their legal counsel, via a public records request.

Following the Respondents' response opposing the motion to dismiss, the trial court conducted a hearing. At the conclusion of the hearing, the trial court took the Petitioners' motion to dismiss under

7

advisement, and requested that the parties submit proposed orders. Thereafter, the trial court entered an unelaborated order granting, in part, and denying, in part, the Petitioners' motion to dismiss. The trial court dismissed Counts III, VII, and XI as duplicative of Counts I, V, and IX; dismissed Count XIII based on failure to state a cause of action/mootness; and ordered the Petitioners to respond to the remaining counts in the amended complaint within twenty days from the date of the order. The Petitioners' petition for writ of certiorari followed.

## II. ANALYSIS:

The Petitioners seek certiorari review of the non-final, non-appealable order denying, in part, their motion to dismiss based on absolute immunity. To be entitled to certiorari relief, the Petitioners must establish the following: (1) a departure from the essential requirements of law, (2) resulting in material injury for the remainder of the case, and (3) the injury cannot be adequately remedied on direct appeal. See Bd. of Trs. of Internal Improvement Tr. Fund v. Am. Educ. Enters., LLC, 99 So. 3d 450, 454-55 (Fla. 2012); Am. Franchise Grp. LLC v. Gastone, 319 So. 3d 147, 149 (Fla. 3d DCA 2021). The last two elements—a material injury that cannot be adequately remedied on direct appeal—are jurisdictional and must be analyzed before considering whether there was a departure from

8

the essential requirements of law.  Bd. of Trs., 99 So. 3d at 454-55; Am. Franchise Grp., 319 So. 3d at 149.

### A. Certiorari Jurisdictional Analysis

Here, the Petitioners have established that this Court has certiorari jurisdiction to address the trial court's order denying their motion to dismiss based on absolute immunity.  "[A]bsolute immunity protects a party from having to defend a lawsuit at all, and waiting until final appeal to review an order denying dismissal on immunity grounds renders such immunity meaningless if the lower court denied dismissal in error."  Fla. State Univ. Bd. of Trs. v. Monk, 68 So. 3d 316, 318 (Fla. 1st DCA 2011); see also Stephens v. Geoghegan, 702 So. 2d 517, 521 (Fla. 2d DCA 1997) (stating that because absolute immunity is immunity from suit, certiorari relief is appropriate).

### B. Merits Analysis

As the Petitioners have established the jurisdictional threshold for certiorari relief, we now address whether the trial court departed from the essential requirements of law by denying the Petitioners' motion to dismiss the defamation counts based on absolute immunity.  We conclude the trial court did depart from the essential requirements of law.

In Florida, public officials are absolutely immune from suit for

9

defamation as long as their allegedly defamatory statements were made within the scope of their duties.  See del Pino Allen v. Santelises, 271 So. 3d 1112, 1114 (Fla. 3d DCA 2019) (quoting Stephens, 702 So. 2d at 522) ("Public officials who make statements within the scope of their duties are absolutely immune from suit for defamation."); Cameron v. Jastremski, 246 So. 3d 385, 387 (Fla. 4th DCA 2018) (same); Cassell v. India, 964 So. 2d 190, 193 (Fla. 4th DCA 2007) (same). The scope of a public official's duties is to be liberally construed.  Cameron, 246 So. 3d at 388; Cassell, 964 So. 2d at 194.

Here, Chief Zahralban is the director of the City's fire-rescue department. See § 2-232, City of Miami Code (stating, in part, that "[t]he fire chief shall be the director of the department of fire-rescue").  As the director of the fire-rescue department, Chief Zahralban is responsible for personnel decisions of the fire force.  See § 2-233, City of Miami Code (stating that "the director of the department of fire-rescue shall administer the affairs of the department, which shall include the immediate direction and control of the fire force . . . .").  Further, the written and oral statements made by Chief Zahralban relating to the terminations of the Respondents fell within scope of his duties as the director of the fire-rescue department.  The statements kept the public informed as to the termination of the three City

firefighters as a result of an incident(s) that occurred at a City fire station. See Martinez de Castro v. Stoddard, 314 So. 3d 397, 403 (Fla. 3d DCA 2020) ("Mayor Stoddard's blog post and letter regarding the actions and conduct of Chief Martinez de Castro fell within scope of his duties as mayor—to keep his constituents informed of current events and operations within the City of South Miami and its government, including the operations and performance of his police department and its police chief."); see also Hauser v. Urchisin, 231 So. 2d 6, 6-8 (Fla. 1970) (holding that city commission had absolute immunity from lawsuit for defamatory statements made to press regarding former city prosecutor's dismissal); Quintero v. Diaz, 300 So. 3d 288 (Fla. 3d DCA 2020) (holding that "Diaz—as Mayor— enjoys absolute immunity from statements contained in the termination letter as they are shielded by privilege from suit"). Therefore, Chief Zahralban and the City are absolutely immune from suit for Chief Zahralban's written and oral statements relating to the City's termination of the Respondents as the statements were made within the scope of Chief Zahralban's duties as the director of the City's fire-rescue department. As such, the trial court departed from the essential requirements of law by denying Chief Zahralban's and the City's motion to dismiss on absolute immunity grounds. Accordingly, we grant the petition and quash the portion

11

of the order denying the Petitioners' motion to dismiss the defamation counts as they are barred by absolute immunity.

The remaining arguments raised by the Respondents in response to the petition for writ of certiorari lack merit and do not warrant discussion.

Petition granted and order quashed consistent with this opinion.