[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 23-13364

Non-Argument Calendar

_____

EDWIN GOMEZ,

Plaintiff-Appellee,

*versus*

THE CITY OF MIAMI,
a municipal corporation authorized to do business
under the laws of the State of Florida,

Defendant,

JAVIER ORTIZ,
an individual,

2                    Opinion of the Court                    23-13364

Defendant-Appellant.

————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:21-cv-23668-KMW

————————————

Before ROSENBAUM, BRASHER, and ABUDU, Circuit Judges.

PER CURIAM:

Javier Ortiz appeals the district court's denial of absolute immunity at summary judgment on a defamation claim brought by Edwin Gomez. After careful review, we affirm the denial of immunity.

The underlying facts are largely undisputed. On January 17, 2020, City of Miami commissioners held a special meeting, requested by the Miami Community Police Benevolent Association, to discuss racial disparities within the police department. During the meeting, Gomez, a City of Miami police sergeant, made a statement in which he claimed that most of the problems in the department "surround one particular individual," namely Ortiz, a City police captain, and he accused Ortiz of race discrimination, retaliation, and lying. Ortiz also spoke at the hearing. Ortiz began his remarks by stating that he was "not here as a captain or a lieutenant or a sergeant," but rather "on behalf of the . . . Miami Fraternal Order of Police." Regarding Gomez, Ortiz stated, "he's a

documented coward. He ran away from a fight years ago." He continued that Gomez was "substantiated for cowardice" and suspended as a result.

The other allegedly defamatory comments were made in a group chat on the Telegram application. The chat group consisted of City police officers and was used to exchange information concerning the department. According to Gomez's testimony, during a discussion of union matters in the group chat, Ortiz became upset when Gomez posted a complaint that he and others previously had filed against Ortiz. In response, Ortiz began to "personally attack [Gomez] about personal family matters," claiming that his partner had "left [him] for a better man" and that he had "domestic violence issues."

Ortiz claims absolute immunity under Florida state law for his statements that Gomez "ran away from a fight" and that Gomez had "domestic violence issues" because, in his view, he was acting within the scope of his duties as a police officer. The district court rejected that argument, reasoning that there was no "official purpose" for the subject statements, even if he was speaking to other police officers at a police meeting or in police forums.

We review *de novo* the denial of absolute immunity at summary judgment. *Jones v. Cannon*, 174 F.3d 1271, 1281 (11th Cir. 1999). Because absolute immunity is an immunity from suit, the denial of that immunity is immediately reviewable. *See, e.g., Ellis v. Coffee Cnty. Bd. of Registrars*, 981 F.2d 1185, 1189 (11th Cir. 1993)

("[D]enial of a claim of absolute immunity is an immediately appealable interlocutory order.").

Under Florida law, "public officials who make statements within the scope of their duties are absolutely immune from suit for defamation." *Cameron v. Jastremski*, 246 So. 3d 385, 387 (Fla. Dist. Ct. App. 2018) (cleaned up). Absolute immunity rests on the principle that officials "carrying out service to the public should be free to exercise their duties unembarrassed by the fear of damage suits in respects of acts done in the course of those duties." *Id.* (quoting another source); *see also Bates v. St. Lucie Cnty. Sheriff's Office*, 31 So. 3d 210, 213 (Fla. Dist. Ct. App. 2010). Thus, "if the underlying action performed by the public official was within the scope of his duties, a malicious and false statement made during the exercise of this duty is absolutely privileged." *Albritton v. Gandy*, 531 So. 2d 381, 387 (Fla. Dist. Ct. App. 1988). Absolute immunity "protects the statements of all public officials, regardless of the branch of government or the level of the official." *Cassell v. India*, 964 So. 2d 190, 194 (Fla. Dist. Ct. App. 2007).

We liberally construe the scope of a public official's duties. *Cameron*, 246 So. 3d at 388. That means duties are "not confined to those things required of the officer," but include "all matters which he is authorized to perform." *Id.* (quotation marks omitted).

But there are limits to the scope of an official's duties. "Conduct is within the scope of one's employment if it is the type of conduct which the employee is hired to perform, the conduct occurs substantially within the time and space limits authorized or

required by the work to be performed, and the conduct is activated at least in part by a purpose to serve the employer." *Alfino v. Dep't of Health and Rehab. Servs.*, 676 So. 2d 447, 449 (Fla. Dist. Ct. App. 1996); *see also Craft v. John Sirounis & Sons, Inc.*, 575 So. 2d 795, 796 (Fla. Dist. Ct. App. 1991) (same). Thus, immunity may not apply if "there was no official purpose for [the] statements." *Albritton*, 531 So. 2d at 387; *Densmore v. City of Boca Raton*, 368 So. 2d 945, 947–48 (Fla. Dist. Ct. App. 1979).

Here, we agree with the district court that the allegedly defamatory statements were not within the scope of Ortiz's duties as a City police captain or officer. Starting with the second incident, Ortiz cites no evidence that the chat group was endorsed or promoted by the City, such that commenting in that forum could be considered within the scope of his authorized duties. The comments arose in a discussion about union matters, not official police business. And the allegedly defamatory comments cannot reasonably be construed as "defending both his and his [department]'s official action." *Hauser v. Urchisin*, 231 So. 2d 6, 7 (Fla. 1970). Rather, the comments were simply ad hominem attacks concerning matters that had nothing to do with the complaint against Ortiz, Gomez's credibility, or general police business. *See Densmore*, 368 So. 2d at 947 ("[I]f there was no official purpose, such as in explanation of the discharge of an employee, upon which to base the disclosure of personal information about an employee, then the official might not be able to invoke the privilege.").

Ortiz suggests he has absolute immunity anytime he is speaking to other Miami police officers, but he is incorrect. In *Albritton*, for example, the court held that a county commissioner's statements to a county administrator, attempting to get another employee fired due to a personal vendetta, were not privileged because the county commissioner was not in charge of hiring and firing and, thus, "there was no official purpose" for his statements. 531 So. 2d at 387. In other words, as the district court here observed, "it did not matter that the commissioner was speaking to a county administrator, only that the commissioner was speaking about personnel issues when he 'was not in charge of hiring or firing.'" So his comments were not "were not made while [the commissioner] was exercising an official duty." *Id.*

Ortiz cites *Stephens v. Geoghegan*, 702 So. 2d 517 (Fla. Dist. Ct. App. 1997), for the proposition that his duties included "disseminat[ing] information to fellow officers." But the facts of *Stephens* are clearly distinguishable. In *Stephens*, several "high-ranking police officers"—the police chief, the assistant police chief, and a police major—distributed a memorandum to all police personnel on a "matter of serious public concern: the investigation into a shooting by a police officer that resulted in a citizen's death." *See id.* at 522–23. It's no surprise that the court viewed the dissemination of such important information to fellow officers as "clearly" within the ambit of the defendants' duties as leaders in the police department. *Id.* at 523. Ortiz identifies no similar official purpose for his comments about Gomez's "domestic violence issues" in a private chat forum.

The first incident before the City commissioners presents a closer question, but ultimately we see no error in the district court's denial of absolute immunity.  As the court observed, Ortiz was "not making the statements in a supervisory capacity," as he was not in Gomez's chain of command at the time.  In fact, by his own account, Ortiz was not speaking in his capacity as a City police captain or ranking officer.  Instead, his comments before the commissioners were expressly made as a police union representative.  As a result, the facts here are not comparable to *Cassell*, on which Ortiz relies, where the allegedly defamatory comments related to the legitimacy of a subordinate officer's injury, and so "were part and parcel of [the officer's] duties as [the plaintiff's] supervisor" and to other ranking officers in the chain of command.  964 So. 2d at 196.

Nor is this case like *City of Miami v. Wardlow*, 403 So. 2d 414 (Fla. 1981), where a police captain called another police department to inquire about a potential employee's background, and an officer of the former employer allegedly defamed the employee in response.  *Id*. at 416.  The Florida Supreme Court held that the officer was entitled to absolute immunity because his duties included "communicating the results of his department's investigations to inquiring officials from another municipal police department."  *Id*. Ortiz cites no evidence and makes no clear argument that he was similarly authorized by his position to disclose personnel matters about officers not under his chain of command.  *See Cameron*, 246 So. 3d at 388 (noting that cases finding absolute immunity

"generally involve a public official exercising supervisory responsibilities over another public employee or over personnel matters.").

Ortiz responds that he had a right to defend the police department's and his official conduct from public attack, comparing his situation to that in *Hauser*. In *Hauser*, a city prosecutor, after his position was abolished by the City Commission, issued a press release challenging the decision as unreasonable and accusing Commissioner Hauser of a vendetta against him. *Hauser*, 231 So. 2d at 7. In response, Hauser said to a newspaper that the prosecutor's "respect for the truth is not famous," and that while "he considers his services invaluable to the City, . . . the taxpayers might consider them to be awfully, awfully expensive." Both sets of comments were printed in one article. The Florida Supreme Court reasoned that Hauser was entitled to absolute immunity because his comments could not be "construed as anything short of defending both his and the commission's official action, the conduct of which the general public has a right to expect to be above reproach and gilded with utmost honesty and integrity[.]" *Id.*

Here, in contrast, Ortiz's comments about Gomez do not present as a rebuttal or defense of Gomez's retaliation charge, or anything else Gomez spoke about.[1] Nor did they pertain to the

---

[1] It appears to be undisputed that Ortiz was referring to an incident for which Gomez was disciplined, and for which he claimed retaliation by Ortiz. Those additional facts are not discernible from the hearing transcript in the record, though. In *Hauser*, in contrast, the original comments and the allegedly defamatory response were printed in the same newspaper article. *See Hauser v. Urchisin*, 231 So. 2d 6, 7 (Fla. 1970).

ostensible purpose of the hearing, which was about racial disparities in the police department. Rather, Ortiz simply called Gomez a "coward" who "ran away from a fight" and was suspended by the City. Plus, as we've noted, Ortiz was expressly responding as the designated representative of a police union, not on behalf of the police department or in his capacity as captain. Thus, we agree with the district court that this situation is more like *Albritton*, where the allegedly defamatory comments "were not made while [Ortiz] was exercising an official duty." 531 So. 2d at 387.

Finally, Ortiz maintains that the district court failed to liberally construe the scope of his duties, but he fails to cite any case in which Florida courts have granted absolute immunity in comparable circumstances.

For these reasons, we affirm the district court's denial of absolute immunity to Ortiz on Gomez's defamation claims.

**AFFIRMED.**