964 So.2d 190 (2007)
David CASSELL, Appellant,
v.
John INDIA and City of Pompano Beach Police Department, Appellees.
No. 4D06-1716.
District Court of Appeal of Florida, Fourth District.
August 22, 2007.
Rehearing Denied October 8, 2007.
*191 Alain E. Boileau and Robert H. Schwartz of Adorno & Yoss LLP, Fort Lauderdale, for appellant.
Jacqueline G. Emanuel of Riley, Knoerr & Emanuel, Fort Lauderdale, for appellee John India.
TAYLOR, J.
David Cassell, a police lieutenant for the Pompano Beach Police Department, appeals a final judgment of $50,000 entered in favor of John India, a police officer supervised by Cassell. The final judgment was based on India's claim against Cassell for defamation and intentional infliction of emotional distress. Lieutenant Cassell argues on appeal that his motions for directed verdict should have been granted because he was entitled to absolute immunity for these claims. We agree and reverse the judgment.
John India worked under Lieutenant David Cassell's supervision at the Pompano Beach Police Department from 1987 to 1997. On October 10, 1997, India was on road patrol when he attempted to arrest a suspect for possession of a stolen vehicle. The suspect fought with India and during the scuffle India injured his back. The next day India went to the hospital emergency room. The doctors recommended light duty work, with instructions to abstain from any bending, standing, lifting for prolonged periods, and lifting more than ten to twenty pounds. Cassell placed India on light duty status at the front desk. At that time, the police department had too many people on light duty. Cassell, as shift commander, was thus under pressure from the Chief of Police and the City Manager to ensure that everyone who was on light duty was properly placed there.
Before his injury, India had been an amateur bodybuilder for many years. He was used to working out with heavy weights. He discussed his weight training exercises and machines with his doctors. Although they did not tell him to stop lifting weights at the gym, they did caution him to be careful and not to use too much weight. India continued to work out, using lighter weights. Based on his knowledge of anatomy and body mechanics and his experience in bodybuilding, he felt that the exercise would help strengthen his lower back.
Cassell testified that on several occasions he had observed that India was "pumped up" at work and appeared to have been working out. Cassell believed that this was inconsistent with India's light duty assignment and contrary to his restriction against lifting anything over ten to twenty pounds. Cassell reported his *192 observations to his superior officer, Captain Bill Wimer, and was told to report the matter to the city's insurance department. The insurance department then placed India under surveillance. Surveillance videos taken while India was on light duty showed him lifting weights in a gymnasium. Daniel Murray, a captain at the police department, discussed the surveillance video with India's orthopedic surgeon. The surgeon said there was no problem with India's activities as depicted on the videotape. Nevertheless, the city's insurance department contacted the Florida Department of Insurance (DOI) to request a fraud investigation.
Officer Hankz, who had witnessed the altercation with the suspect that injured India, heard rumors that India was going to be arrested. He approached Cassell, who was his lieutenant, and asked him if the rumors were true. Cassell said that he could neither confirm nor deny the rumors. Later, after the rumors became more widespread, Hankz again questioned Cassell about the rumors, and Cassell told him that India's status there was questionable. On a third occasion, Hankz asked Cassell about these same rumors and also asked him about a rumor that India was going to be arrested on a specific date. Cassell responded, "Yeah, and there is a Dr. Shapiro involved in it, too."
Charles Scibilia was a detective and a PBA representative at the Pompano Beach Police Department in 1997. He heard that India had been hurt, but India never approached him about a disability pension. On January 31, 1998, Scibilia was having a discussion with Brian McDonald, a Pompano Beach officer and elected member of the pension board. India's name came up in the conversation. They were discussing India's back injury and wondering whether he might need a disability pension. Cassell approached them, interrupted their conversation, and interjected that India had a lot of personal problems. He said that he knew for a fact that India did not get hurt on duty. Scibilia interpreted Cassell's statement as accusing India of a felony fraud. Cassell denied accusing India of fraud, but admitted suggesting that India was going to be arrested. He acknowledged that he never actually believed that India would be arrested; he said his remarks were "off-the-cuff." But, because Scibilia thought that Cassell was trying to influence him to deny India a disability pension, Scibilia complained to Internal Affairs. He believed he had a responsibility, as both a police officer and a PBA representative, to report that India's superior officer was accusing a fellow officer of committing a felony.
By May 27, 1998, India had returned to full-duty work. On September 4, 1998, DOI closed its investigation of India. Captain Murray denied telling Cassell to call John Landry at DOI to have the case reopened. However, he did give Cassell a "chain of command" form, instructing him to contact Landry and find out why they were declining prosecution. Cassell spoke to Landry two or three times. Cassell asked him why he had not investigated the case more thoroughly. Landry responded that it was none of his business. On October 9, 1998, Cassell asked to speak to Landry's superior to try to get the investigation reopened. Internal Affairs closed its investigation in July 1999. No charges were ever filed, and India was never arrested.
India sued both Cassell and the City of Pompano Beach. The second amended complaint alleged that Cassell had made false statements to several individuals suggesting that India was fraudulently obtaining workers' compensation benefits. Paragraph 19 of the second amended complaint alleged:

*193 The Defendant, LIEUTENANT DAVID CASSELL, was within the course and scope of his employment with the Defendant, CITY OF POMPANO BEACH, during the time of the above described actions.
In his answer to the second amended complaint, Cassell denied the wrongful conduct, but admitted that he was in the course and scope of his employment at all material times.
At the close of the plaintiff's case, Cassell moved for a directed verdict based upon absolute immunity. The trial judge denied the motion. He conceded that he was having a great deal of difficulty with the issue, but was sending the case to the jury in an abundance of caution.[1] The jury returned a verdict finding Cassell liable on theories of defamation and intentional infliction of emotional distress. The jury awarded damages in the amount of $50,000. Cassell renewed his motion for directed verdict and moved for judgment notwithstanding the verdict, a new trial and/or remittitur. The trial court denied the motions and entered final judgment for India.
Cassell argues that the trial court erred as a matter of law in denying his motions for directed verdict because he was entitled to absolute immunity from India's defamation and intentional infliction of emotional distress claims. Specifically, he argues that his alleged defamatory statements were made within the course and scope of his duties and employment as a police officer, as a lieutenant in the chain of command, and as India's supervisor. Cassell contends that he was authorized to make statements regarding the veracity of his subordinate's alleged injury, not only to the chain of command, but to the insurance department, representatives from the PBA and the Pension Board, and to another subordinate who witnessed the incident causing the alleged injury and who questioned Cassell directly about the matter. For these same reasons, Cassell argues he is entitled to absolute immunity from India's claim for intentional infliction of emotional distress.
Our standard of review of a trial court's ruling on a motion for directed verdict is de novo. See Contreras v. U.S. Sec. Ins. Co., 927 So.2d 16, 20 (Fla. 4th DCA 2006), review denied, 954 So.2d 28 (Fla.2007). The question of whether an alleged defamatory statement is absolutely privileged is a question of law for the court. See Resha v. Tucker, 670 So.2d 56, 57 (Fla.1996).
An absolute privilege has been explained, as follows:
"These `absolute privileges' are based chiefly upon a recognition of the necessity that certain persons, because of their special position or status, should be as free as possible from fear that their actions in that position might have an adverse effect upon their own personal interests. To accomplish this, it is necessary for them to be protected not only from civil liability, but also from the danger of even an unsuccessful civil action. To this end, it is necessary that the propriety of their conduct not be inquired into indirectly by either court or jury in civil proceedings brought against them for misconduct in their position. Therefor the privilege, or immunity, is absolute and the protection that it affords is complete. It is not conditioned upon the honest and reasonable belief that the defamatory matter is true or upon the absence of ill will on the part of the actor."
*194 Fridovich v. Fridovich, 598 So.2d 65, 68 (Fla.1992) (quoting Restatement (Second) of Torts § 584, at 243) (emphasis omitted).
In Florida, "[p]ublic officials who make statements within the scope of their duties are absolutely immune from suit for defamation." Stephens v. Geoghegan, 702 So.2d 517, 522 (Fla. 2d DCA 1997). An absolute privilege protects the statements of all public officials, regardless of the branch of government or the level of the official. See Hauser v. Urchisin, 231 So.2d 6, 8 (Fla.1970); Stephens, 702 So.2d at 522. The privilege extends to police officers. Id.; see also Stewart v. Sun Sentinel Co., 695 So.2d 360, 361 (Fla. 4th DCA 1997).
The controlling factor in deciding whether the absolute privilege applies is "whether the communication was within the scope of the officer's duties." City of Miami v. Wardlow, 403 So.2d 414, 416 (Fla.1981). The scope of an officer's duties is to be liberally construed. Goetz v. Noble, 652 So.2d 1203, 1205 (Fla. 4th DCA 1995). The term "duties" is not confined to those things required of the officer, but rather extends to all matters which he is authorized to perform. See Stephens, 702 So.2d at 523; Restatement (Second) of Torts § 591, Comment f, at 256. Because the balancing of interests favors the public official, it is considered better "`to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation.'" Barr v. Matteo, 360 U.S. 564, 572, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959) (quoting Judge Learned Hand, writing for the court in Gregoire v. Biddle, 177 F.2d 579, 581 (2d Cir.1949)).
Cassell points out that India's complaint affirmatively alleged that at all material times Cassell was acting within the "course and scope of his employment" with the city, an allegation which India has not disavowed. In Stephens, the second district placed great reliance on a similar allegation in upholding a summary judgment on absolute privilege grounds. The court stated that the record revealed no attempt by the plaintiffs to disavow the allegation, "which seems, by itself, to foreclose any argument that these statements were made during anything but the normal course of the defendants' duties." 702 So.2d at 522-23.
India's answer brief concedes that Cassell was acting within the course and scope of his employment, but argues that this is different from acting within the scope of his duties. According to India, Cassell's own trial testimony that he was not involved in the investigation of India demonstrates that his statements were not within the scope of his duties or powers and thus are not protected by absolute immunity. These statements include: (1) Cassell's statements to his superior officer and the insurance department; (2) Cassell's statements to the pension board member and PBA representative that he knew for a fact that India did not get hurt on the job and his comment during the same discussion about India's impending arrest; and (3) Cassell's responses to a subordinate officer that he could not confirm or deny rumors that India was going to be arrested and his later comments that India was going to be arrested and that a Dr. Shapiro was involved.
With respect to the statements Cassell made to his superior officers and representatives of the insurance department, we have no difficulty determining that these were absolutely privileged. Cassell was authorized to report what he suspected was fraud and a potential crime to his own superiors and, at their request, to the insurance department. See Forman v. Murphy, 501 So.2d 640, 642 (Fla. 4th DCA 1986) (holding that the filing of a report by *195 a superior officer about a conversation which violated the police department's policies was within the scope of the superior officer's duties and therefore absolutely immune). Likewise, Cassell was authorized to comment on the veracity of his subordinate's claim of injury to representatives from the PBA and the Pension Board, as they were contemplating India's potential claim for pension benefits. As India's direct supervisor, Cassell could reasonably inform these officers that he believed any such claim would be fraudulent. That Cassell misrepresented his belief or suspicion of fraud as a fact or reported India's impending arrest without any foundation does not change the fact that he was acting within the scope of his authority in cautioning them about his subordinate's potential claim.
The more difficult question appears to be whether Cassell was authorized to address the inquiry from a subordinate, Officer Hankz, by falsely confirming that the arrest rumor was true. The best answer to this question comes from Judge Learned Hand, who stated:
"The decisions have, indeed, always imposed as a limitation upon the immunity that the official's act must have been within the scope of his powers; and it can be argued that official powers, since they exist only for the public good, never cover occasions where the public good is not their aim, and hence that to exercise a power dishonestly is necessarily to overstep its bounds. A moment's reflection shows, however, that that cannot be the meaning of the limitation without defeating the whole doctrine. What is meant by saying that the officer must be acting within his power cannot be more than that the occasion must be such as would have justified the act, if he had been using his power for any of the purposes on whose account it was vested in him."
Barr, 360 U.S. at 572, 79 S.Ct. 1335 (quoting Gregoire, 177 F.2d at 581); see also McNayr v. Kelly, 184 So.2d 428, 432 (Fla. 1966) (quoting and characterizing Judge Hand's statement as an "excellent dissertation" on the subject). Thus, the fact that Cassell had the authority to address a department rumor of worker's compensation fraud in direct response to an inquiry from a subordinate officer, who had personal knowledge of the circumstances surrounding India's injury, is sufficient to bring the statement within the scope of Cassell's duties, without regard to the fact that the substance of the statement was unsupported and turned out to be false. The fact that Cassell's statement may be viewed as having an unworthy or non-public purpose does not destroy the privilege. Barr, 360 U.S. at 575, 79 S.Ct. 1335; Restatement (Second) Torts § 591, comment d (privilege exists irrespective of officer's purpose in making statement).
Two factually similar cases in Florida that support application of the privilege in this case are Wardlow and Stephens. In Wardlow, a police captain called a potential employee's former employer at another police department to inquire about the employee's background. The officer with the former employer allegedly defamed the employee. The Florida Supreme Court held that the officer's response to the inquiry was clearly within the scope of his duties and entitled him to absolute immunity. Wardlow, 403 So.2d at 416.
Similarly, in Stephens, the police officers were alleged to have falsely represented the outcome of a "shooting board" review in a memorandum sent to all officers and by one officer's statements to police personnel. The second district applied absolute immunity, finding the fact that the officers had disseminated information to fellow officers "clearly lies within the ambit *196 of each's duties in the police department." Stephens, 702 So.2d at 523.
India relies on Albritton v. Gandy, 531 So.2d 381 (Fla. 1st DCA 1988), for an affirmance. There, a county commissioner tried to get a low-level county employee fired due to a personal vendetta. The court held that the county commissioner's statements resulting in the county employee's discharge were not privileged because the county commissioner was not in charge of hiring and firing and, thus, "there was no official purpose" for his statements. Id. at 387. However, India's reliance upon Albritton is misplaced because the county commissioner's actions were found to have fallen outside the scope of his duties, such that his statements were not absolutely privileged. In contrast, Cassell's statements were part and parcel of his duties as India's supervisor and as a ranking officer accountable to other officers either in the chain of command or in positions of responsibility over potential claims for benefits.
We further hold that absolute immunity bars India's claim of intentional infliction of emotional distress. This claim is simply a recast of the defamation claim; it too is barred by the privilege. Stephens, 702 So.2d at 525 (holding that "the defendants' writings and comments, for which they are immune from suit for defamation, are likewise protected against a retooling of the claim couched in terms of intentional infliction of emotional distress").
Accordingly, we reverse and remand with directions to enter judgment for appellant, David Cassell.
Reversed.
WARNER and GROSS, JJ., concur.
NOTES
[1] The judge granted the City of Pompano Beach's motion for directed verdict.