# DISTRICT COURT OF APPEAL OF FLORIDA
## SECOND DISTRICT

_____

RICK MILLS and TROY PUMPHREY,

Petitioners,

v.

JOSEPH KINNAN and LINDA KINNAN,

Respondents.

Nos. 2D2024-0891, 2D2024-0896
CONSOLIDATED

_____

April 4, 2025

Petitions for Writ of Certiorari to the Circuit Court for Manatee County;
Hunter W. Carroll, Judge.

David A. Wallace of Bentley Goodrich Kison, P.A., Sarasota; and Robert
K. Robinson of Rob Robinson Attorney, P.A., Sarasota, for Petitioner Rick
Mills.

Robert K. Robinson of Rob Robinson Attorney, P.A., Sarasota, for
Petitioner Troy Pumphrey.

Jennifer Seymore of Seymore Justice, Tallahassee; John Romano and
Corey Friedman of Romano Law Group, West Palm Beach; and Elizabeth
Zwibel, Saint Petersburg, for Respondents.

ATKINSON, Judge.

Rick Mills and Troy Pumphrey have each petitioned this court for a writ of certiorari seeking review of the trial court's order denying their respective motions for summary judgment. They request that this court quash the portion of the trial court's summary judgment order that denied their claimed entitlement to common law absolute immunity from Joseph and Linda Kinnan's malicious prosecution claims. We consolidate their petitions for purposes of this opinion. Because the trial court departed from the essential requirements of law by denying them common law absolute immunity from the Kinnans' malicious prosecution claims, thereby causing material injury that cannot be corrected on postjudgment appeal, we grant their petitions and quash the trial court's order in part.

## Background

The underlying litigation concerns the Manatee County School Board's investigations into alleged misconduct of plaintiff Joseph Kinnan, the school district's then-business manager and athletic director. Defendant Rick Mills was the school district's superintendent, and defendant Troy Pumphrey was an investigator in the school district's Office of Professional Standards (OPS).

Two investigations of Mr. Kinnan were conducted by Mr. Pumphrey at Mr. Mills' direction. The first investigation concerned the Manatee High School baseball program. Mr. Pumphrey prepared a written report that, in relevant part, detailed the scope of his investigation, explained his findings regarding the allegation that Mr. Kinnan knowingly allowed the high school's baseball coach to serve as a paid coach without the proper certification, and alleged that Mr. Kinnan's conduct violated the Principles of Professional Conduct for the Education Profession in

2

Florida.  *See* Fla. Admin. Code R. 6A-10.081.  Mr. Pumphrey sent a copy of his report to the Florida Department of Education, as well as an employee misconduct reporting form that summarized the allegations.

The second investigation was prompted after the publication of a newspaper article containing statements from Mr. Kinnan that allegedly misrepresented the facts concerning the investigation of the high school's baseball program.  Mr. Pumphrey investigated the issue and sent a second employee misconduct reporting form to the Department of Education reporting that Mr. Kinnan "intentionally provided false information to the news media regarding an internal School Board investigation."

A school district disciplinary committee reviewed Mr. Pumphrey's findings and recommended disciplinary sanctions against Mr. Kinnan, and school district superintendent Mr. Mills agreed with the committee's recommendations.  The School Board filed a complaint against Mr. Kinnan in the Division of Administrative Hearings seeking disciplinary sanctions, but the School Board dismissed the complaint after Mr. Kinnan retired.

The Department of Education conducted its own investigation, following which it notified Mr. Kinnan that it found probable cause to justify sanctions against his Florida Educator Certificate.  The Department of Education filed an administrative complaint with the Education Practices Commission—the state agency responsible for applying the standards of professional practice and imposing discipline upon educators—seeking sanctions against Mr. Kinnan's certificate, but it later voluntarily dismissed the complaint.

Mr. and Mrs. Kinnan filed a multicount complaint against the School Board, superintendent Mr. Mills, and investigator Mr. Pumphrey,

3

but the only claims relevant to this opinion are their claims against Mr. Mills and Mr. Pumphrey for malicious prosecution. Their fifth amended complaint alleged that Mr. Mills and Mr. Pumphrey knowingly fabricated the allegations against Mr. Kinnan and that their provision of those fabricated allegations to the Department of Education caused the department to file the administrative complaint without probable cause to do so. They specifically alleged the following in the count against Mr. Mills:

> 352. The [Department of Education] Administrative Complaint was initially caused to be filed by MILLS, who supervised PUMPHREY, against J. KINNAN under dubious circumstances and relied upon a deeply flawed investigation that was forwarded to [the Department of Education].

> 353. The actions instigated by MILLS were done with malice and were commenced without probable cause because the "probable cause" that did exist was a fabrication from MILLS and PUMPHREY and were used to cause J. KINNAN to retire under duress.

> 354. [The Department of Education]'s finding of "probable cause" stemmed from false allegations in [the first employee misconduct reporting form] that J. KINNAN had "direct knowledge" of [the baseball coach]'s expired certification and "allowed" [the baseball coach] to coach anyway.

> 355. [The Department of Education]'s finding of "probable cause" was influenced by the [Manatee High School] Report [concerning the baseball program investigation] and [the School Board's] Administrative Complaint which were full of misrepresentations and false allegations.

> 356. After J. KINNAN responded to the initial [Department of Education] preliminary investigation letter of November 8, 2013, with responses to [the Department of Education] on November 24, 2013, and February 6, 2014, in which [the school district] clearly became aware of, MILLS orchestrated and directed the following misrepresentations to be made to [the Department of Education]:

4

a. On January 28, 2014, Glisson faxed a document to [the Department of Education] that misrepresented her role in monitoring coaching certifications. This communication is believed to be in response to J. KINNAN's November 24, 2013, information.

b. On February 11, 2014, Saunders, who directly reported to MILLS, faxed to [the Department of Education] information that misrepresented J. KINNAN's contracted position with [the school district]. This communication is believed to be in response to J. KINNAN's February 6, 2013, amended response to [the Department of Education]. Curiously, MILLS had met with Florida Superintendent of Education, Pam Stewart, the day before on February 10, 2014.

c. On March 12, 2014, PUMPHREY sent a second [employee misconduct reporting form], EMRF2, to [the Department of Education], falsely claiming that " . . . Kinnan intentionally misrepresented the facts of the SCHOOL BOARD investigation in order to influence the public's opinion. Further, Kinnan intentionally provided false information to the news media regarding an internal SCHOOL BOARD investigation."

The Kinnans made identical allegations for the malicious prosecution claim against Mr. Pumphrey.

Mr. Mills and Mr. Pumphrey jointly moved for summary judgment. One of their arguments was that they were entitled to absolute immunity from the malicious prosecution claims because the claims were predicated upon allegedly false statements that they made within the scope of their employment. The trial court denied their motion.

## Analysis

To obtain certiorari relief, a "petitioner must establish (1) a departure from the essential requirements of the law, (2) resulting in material injury for the remainder of the trial (3) that cannot be corrected on postjudgment appeal." *Parkway Bank v. Fort Myers Armature Works, Inc.,* 658 So. 2d 646, 648 (Fla. 2d DCA 1995). "The last two elements are

5

jurisdictional and must be analyzed before the court may even consider the first element." *Williams v. Oken*, 62 So. 3d 1129, 1132 (Fla. 2011).

## I.

This court has certiorari jurisdiction to review a trial court's denial of absolute immunity because the immunity, when applicable, "protect[s] a public official from having to defend a suit at all," and "[t]his entitlement is lost if the defendant is required to go to trial." *Stephens v. Geoghegan*, 702 So. 2d 517, 521 (Fla. 2d DCA 1997). Absolute immunity provides immunity *from suit*. As such, being forced to defend the suit is itself a material injury to an immune public official. And because a public official who is forced to defend a suit "cannot be reimmunized after-the-fact . . . , an appeal after final judgment would not be an adequate remedy" to review whether the immunity was erroneously denied. *Id.*; *see also Fla. State Univ. Bd. of Trs. v. Monk*, 68 So. 3d 316, 318 (Fla. 1st DCA 2011) ("[A]bsolute immunity protects a party from having to defend a lawsuit at all, and waiting until final appeal to review an order denying dismissal on immunity grounds renders such immunity meaningless if the lower court denied dismissal in error."); *Crowder v. Barbati*, 987 So. 2d 166, 167 (Fla. 4th DCA 2008) ("[A]ny remedy that enforced immunity upon final appeal, after the case had been fully defended, would be meaningless." (citing *Jenne v. Maranto*, 825 So. 2d 409, 415 (Fla. 4th DCA 2002))). Thus, Mr. Mills and Mr. Pumphrey have satisfied the jurisdictional elements necessary for certiorari review.

## II.

A departure from the essential requirements of law occurs "when there has been a violation of [a] clearly established principle of law resulting in a miscarriage of justice." *Williams*, 62 So. 3d at 1133 (quoting *Haines City Cmty. Dev. v. Heggs*, 658 So. 2d 523, 528 (Fla.

6

1995)).  This court in *Stephens* explained when a trial court's denial of a public official's claim to immunity from suit meets this standard:

> We hold that when a public official moves for summary judgment on the ground that he or she enjoys immunity from suit arising under either state or federal law, and the record conclusively demonstrates that the public official is entitled to immunity, it is a departure from the essential requirements of law to deny it.

702 So. 2d at 525.

## A.

"Public officials who make statements within the scope of their duties are absolutely immune from suit for defamation." *Id.* at 522.  The immunity applies "regardless of the branch of government or the level of the official," *Cassell v. India*, 964 So. 2d 190, 194 (Fla. 4th DCA 2007); *see also Stephens*, 702 So. 2d at 522 (providing that absolute immunity protects "low-level, as well high-placed, public officials"), and it applies no matter how "false, malicious, or badly motivated the words may be," *Harrison v. S. Broward Hosp. Dist.*, 382 So. 3d 695, 698 (Fla. 4th DCA 2023) (quoting *Gay v. Jupiter Island Compound, LLC*, 358 So. 3d 780, 786–87 (Fla. 4th DCA 2023)).  This court has recognized that the rationale for such a broad immunity is that it is "in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation." *See Stephens*, 702 So. 2d at 522 (quoting *McNayr v. Kelly*, 184 So. 2d 428, 431 n.12 (Fla. 1966)).

The Kinnans argue that absolute immunity cannot apply in this case because they sued Mr. Mills and Mr. Pumphrey for malicious prosecution, not defamation.  However, the specific cause of action is not dispositive.  It is the public official's underlying conduct that is afforded absolute immunity—that is, statements made within the scope of the

7

official's duties. Absolute immunity protects a public official from a defamation suit because such suits are necessarily predicated on the alleged falsity of the defendant's statements, which is the type of conduct protected by absolute immunity. *See Kieffer v. Atheists of Fla., Inc.*, 269 So. 3d 656, 659 (Fla. 2d DCA 2019) ("Clearly, a false statement about another is a required element of defamation." (citing *Cape Publ'ns, Inc. v. Reakes*, 840 So. 2d 277, 279–80 (Fla. 5th DCA 2003))). Several recorded opinions clearly establish that absolute immunity also protects a public official when a plaintiff "retool[s]" a defamation claim by recasting it as another cause of action. *See Stephens*, 702 So. 2d at 525 ("We hold that the defendants' writings and comments, for which they are immune from suit for defamation, are likewise protected against a retooling of the claim couched in terms of intentional infliction of emotional distress."); *Harrison*, 382 So. 3d at 698 ("The privilege applies to other torts beyond defamation, such as tortious interference and infliction of emotional distress." (first citing *City of Stuart v. Monds*, 10 So. 3d 1134, 1134 (Fla. 4th DCA 2009); and then citing *Cassell*, 964 So. 2d at 196)); *Prins v. Farley*, 208 So. 3d 1215, 1217–18 (Fla. 1st DCA 2017) (granting certiorari on the basis that absolute immunity applied because "Respondent's complaint [w]as, in essence, a retooled defamation claim" (citing *Lock v. City of W. Welbourne*, No. 6:12-cv-680, 2015 WL 1880732, at *27 (M.D. Fla. Apr. 24, 2015))); *Monds*, 10 So. 3d at 1134 (concluding the trial court's refusal to apply absolute immunity to claims for tortious interference and negligent violation of a statute departed from the essential requirements of the law and rejecting the argument "that the doctrine of absolute immunity is inapplicable because of the absence of a defamation claim"); *Cassell*, 964 So. 2d at 196 ("We further hold that absolute immunity bars India's claim of intentional infliction of emotional

8

distress. This claim is simply a recast of the defamation claim; it too is barred by the privilege." (citing *Stephens*, 702 So. 2d at 525)).

Thus, decisional authority clearly establishes that it is not the specific type of cause of action against a public official that gives rise to absolute immunity; rather, it is liability for statements made by a public official within the scope of his or her duties that is precluded by the immunity. Consequently, courts cannot determine the applicability of the immunity in the abstract simply by identifying the specific cause of action asserted; no type of cause of action against all public officials is categorically barred by absolute immunity, but rather a specific type of conduct is categorically protected by absolute immunity—statements made in the scope of a public official's duties, requiring a case-by-case examination of the public official's underlying conduct upon which the cause of action is premised.

In this case, a review of Mr. and Mrs. Kinnan's fifth amended complaint confirms that their malicious prosecution claims are premised on allegedly false statements that Mr. Mills and Mr. Pumphrey made or otherwise caused to be made about Mr. Kinnan. Malicious prosecution occurs when the following elements have been established:

> (1) an original criminal or civil judicial proceeding against the present plaintiff was commenced or continued; (2) the present defendant was the legal cause of the original proceeding against the present plaintiff as the defendant in the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the present defendant; and (6) the plaintiff suffered damage as a result of the original proceeding.

*Debrincat v. Fischer*, 217 So. 3d 68, 70 (Fla. 2017) (quoting *Alamo Rent-A-Car, Inc. v. Mancusi*, 632 So. 2d 1352, 1355 (Fla. 1994)). The Kinnans

allege that it was Mr. Mills and Mr. Pumphrey who maliciously caused the Department of Education to file its administrative complaint against Mr. Kinnan. While they acknowledge that the Department of Education found probable cause to file the complaint, they allege that "the 'probable cause' that did exist was a fabrication" that "stemmed from false allegations" in the materials Mr. Mills and Mr. Pumphrey provided to the Department of Education or "orchestrat[ed]" others to provide to the Department of Education. So, according to Mr. and Mrs. Kinnan's complaint, it is the falsity of the allegations made against Mr. Kinnan by public officials that demonstrates the absence of probable cause for the Department of Education's administrative complaint. Indeed, the Kinnans' response brief in these certiorari proceedings succinctly sets forth the theory "that Mr. Mills and Mr. Pumphrey intentionally and maliciously submitted false complaints of misconduct against [Mr. Kinnan] to the Florida Department of Education, which filed an Administrative Complaint against Mr. Kinnan[] that was ultimately dismissed." Their claims are therefore contingent on establishing that the statements were false, demonstrating that they seek to hold Mr. Mills and Mr. Pumphrey liable for the type of conduct protected by absolute immunity. *Cf. Stephens*, 702 So. 2d at 525 ("The Geoghegans attempt to salvage their emotional distress action by arguing that the defendants' memorandum to police personnel, which serves as a partial basis for the defamation claim, was 'intentionally drafted to deceive' those who read it, setting it apart from the defamation claim. This argument emasculates the notion of absolute immunity—letting survive a claim that the offending speech or writing was intentionally designed to provoke a given response, while protecting the tortfeasor from the substantive tort of defamation itself."). Accordingly, under the circumstance of this case,

10

absolute immunity protects Mr. Mills and Mr. Pumphrey from having to defend the malicious prosecution claims—provided that their conduct occurred within the scope of their respective duties.

**B.**

"The controlling factor in deciding whether the absolute privilege applies is 'whether the communication was within the scope of the officer's duties.' " *Cassell*, 964 So. 2d at 194 (quoting *City of Miami v. Wardlow*, 403 So. 2d 414, 416 (Fla. 1981)). "The scope of an officer's duties is to be liberally construed" and is "not confined to those things required of the officer, but rather extends to all matters which he is authorized to perform." *Id.* (citing *Goetz v. Noble*, 652 So. 2d 1203, 1205 (Fla. 4th DCA 1995)); *see also Stephens*, 702 So. 2d at 523 (reasoning that "the scope of an official's duties extends beyond enumerated, required tasks, and includes discretionary duties that are associated with a given position" (citing *Wardlow*, 403 So. 2d at 416)). Conduct is within the scope of the officer's duties "if it is the type of conduct which the employee is hired to perform, the conduct occurs substantially within the time and space limits authorized or required by the work to be performed, and the conduct is activated at least in part by a purpose to serve the employer." *Alfino v. Dep't of Health & Rehab. Servs.*, 676 So. 2d 447, 449 (Fla. 5th DCA 1996) (citing *Craft v. John Sirounis & Sons, Inc.*, 575 So. 2d 795, 796 (Fla. 4th DCA 1991)).

Here, the record conclusively demonstrates that Mr. Mills' and Mr. Pumphrey's conduct was within the scope of their respective duties. Mr. Pumphrey was hired as an OPS investigator. The School Board's personnel manual authorized—and in fact required—OPS investigators to "conduct investigations into alleged employee misconduct or other matters concerning the school district and make recommendations as to

11

the disposition of such complaints or matters," as well as to "report legally sufficient complaints concerning certificated employees" to the Department of Education. As the superintendent, Mr. Mills had overall responsibility for all school district employees. The superintendent's role in the investigative process was to review OPS reports concerning alleged employee misconduct, decide whether to send them to a disciplinary review committee, and make the final decision regarding disciplinary measures. Mr. Mills also had a statutory obligation to report certain employee matters to the Department of Education. *See* § 1012.795(5)(b), Fla. Stat. (2013) ("Each district school superintendent . . . shall report to the department the name of any person certified pursuant to this chapter . . . [w]ho that official has reason to believe has committed or is found to have committed any act which would be a ground for revocation or suspension [of an educator certificate] under subsection (1) . . . ."); § 1012.796(1)(d) ("Each school district shall file in writing with the department all legally sufficient complaints within 30 days after the date on which subject matter of the complaint comes to the attention of the school district."); *see also* § 1012.795(1)(j) (providing that the Education Practices Commission may revoke or suspend an educator certificate if the educator has "violated the Principles of Professional Conduct for the Education Profession prescribed by the State Board of Education rules").

The Kinnans argue that the conduct was outside the scope of Mr. Mills' and Mr. Pumphrey's duties because it was "not taken in the interest of the public good" but rather to serve their "political interests and personal animosity" against Mr. Kinnan. But even presuming for the sake of analysis that Mr. Mills and Mr. Pumphrey had such interests or animosity—an issue this court need not and does not decide in this proceeding—whether it was in the interest of the public good to

12

investigate Mr. Kinnan and report his alleged misconduct to the Department of Education does not bear upon the question of whether such conduct was within the scope of their duties.

> The decisions have, indeed, always imposed as a limitation upon the immunity that the official's act must have been within the scope of his powers; and it can be argued that official powers, since they exist only for the public good, never cover occasions where the public good is not their aim, and hence that to exercise a power dishonestly is necessarily to overstep its bounds.  A moment's reflection shows, however, that that cannot be the meaning of the limitation without defeating the whole doctrine.  What is meant by saying that the officer must be acting within his power cannot be more than that the occasion must be such as would have justified the act, if he had been using his power for any of the purposes on whose account it was vested in him.

*Barr v. Mateo*, 360 U.S. 564, 572 (1959) (quoting *Gregoire v. Biddle*, 177 F.2d 579, 581 (2d Cir. 1949)); *see also Cassell,* 964 So. 2d at 195 ("The fact that Cassell's statement may be viewed as having an unworthy or non-public purpose does not destroy the privilege." (first citing *Barr*, 360 U.S. at 575; and then citing Restatement (Second) of Torts § 591 cmt. d (Am. L. Inst. 1977))).  Evidence that Mr. Mills and Mr. Pumphrey acted with personal or political motives at most speaks only to the manner or appropriateness of *how* they carried out their duties, not whether those were among their duties in the first place.

The Kinnans further argue that while Mr. Mills and Mr. Pumphrey were "authorized to make *legally sufficient* complaints to the Department of Education, [they were] *not* authorized to make false or misleading complaints," so if they "knew the complaints were false or misleading or otherwise legally insufficient, then [they] certainly w[ere] acting outside the scope of [their] employment."  (Emphasis in original.)  But this argument (a tacit admission that *the task of* submitting complaints of

13

employee misconduct to the Department of Education was in fact within the scope of their duties) conflates whether their conduct was tortious with whether their conduct was within the scope of their duties. Evidence that a public official knowingly makes a false statement about another person may support the conclusion that the statement is defamatory or otherwise tortious, but it does not inform the question of whether that defamatory statement was or was not made within the scope of the official's duties. In fact, the doctrine of absolute immunity itself presupposes that a public official *can* defame someone within the scope of his or her duties, demonstrating that the falsity of the statement does not impact whether the statement was made within the scope of the official's duties. *See Stephens*, 702 So. 2d at 522, 525 (granting certiorari because absolute immunity protected a public official from suit based on statements from public officials that "supposedly misrepresented the results of the shooting review board"); *Harrison*, 382 So. 3d at 698 (referring to absolute immunity's application no matter how "*false*, malicious, or badly motivated the words may be" (emphasis added) (quoting *Gay*, 358 So. 3d at 786–87)); *Gay*, 358 So. 3d at 788 ("[T]he landowners' allegations that the public official falsely and repeatedly stated she had not engaged in ex parte communications regarding the landowners' construction applications is not relevant to whether those actions occurred in the scope of her duties as an IRC member and as its chair." (emphasis omitted) (first citing *Hauser v. Urchisin*, 231 So. 2d 6, 8 (Fla. 1970); and then citing *Fridovich v. Fridovich*, 598 So. 2d 65, 68 (Fla. 1992))); *Cassell*, 964 So. 2d at 192, 195 (concluding absolute immunity applied to alleged "false statements to several individuals suggesting that India was fraudulently obtaining workers' compensation benefits" because whether "Cassell

14

misrepresented his belief or suspicion of fraud as a fact or reported India's impending arrest without any foundation does not change the fact that he was acting within the scope of his authority").  A necessary implication of the Kinnans' argument that the alleged tortious nature of the statements—that they were "false or misleading"—is what takes the conduct beyond the scope of the defendants' duties is the manifestly unreasonable corollary that every instance of defamation would be outside the scope of a public official's duties, meaning the doctrine of absolute immunity would never apply.

Likewise, Mr. Mills' and Mr. Pumphrey's obligation to submit "legally sufficient" complaints to the Department of Education does not mean that the submission of a "legally insufficient" complaint is conduct outside the scope of their duties.  The salient *conduct* subsumed within the scope of their duties was the submission of complaints concerning employee misconduct to the Department of Education.  The contrary argument that whether the submission of complaints fell within their duties depends on whether the complaints satisfied a standard of legal sufficiency is meritless for two reasons.

First, the contention that Mr. Mills and Mr. Pumphrey acted beyond their duties by submitting legally insufficient complaints is based on a faulty premise that legal sufficiency is determined by the veracity of the allegations.  "A complaint is legally sufficient if it contains ultimate facts that show a violation has occurred as provided in s. 1012.795 and defined by rule of the State Board of Education."  § 1012.796(1)(d).  Like the pleading standard in civil litigation, the legal sufficiency of a complaint sent to the Department of Education is evaluated by a review of the ultimate facts contained within the complaint itself.  *Cf. Reyes ex rel. Barcenas v. Roush*, 99 So. 3d 586, 589 (Fla. 2d DCA 2012) (providing

15

that in evaluating legal sufficiency the court "was not allowed to determine the veracity" of the complaint's allegations but only whether they were "properly pleaded"). Whether a public official submits a complaint that includes false or misleading allegations certainly bears on the ultimate success of the complaint—that is, whether the educator committed a violation—but it has no bearing on the complaint's legal sufficiency. Indeed, the very determination of legal sufficiency typically requires a *presumption* that the allegations are true. *Cf., e.g., Williams Island Ventures, LLC v. de la Mora*, 246 So. 3d 471, 475 (Fla. 3d DCA 2018) (explaining that when determining the legal sufficiency of a civil complaint, "a trial court must accept all factual allegations as true" and "construe all reasonable inferences in favor of the pleader"); *Van v. Unifund CCR, LLC*, 154 So. 3d 522, 522 n.1 (Fla. 5th DCA 2015) ("In determining the legal sufficiency of the motion [to disqualify the trial judge], we must presume the facts alleged to be true."). Therefore, the *falsity* of the statements in the complaints would not even make the complaints legally insufficient, much less bring the act of preparing and submitting the complaints outside the "ambit" of the defendants' duties. *See Stephens*, 702 So. 2d at 523.

Additionally, even the legal sufficiency of a particular complaint has no bearing on whether the public official's submission of the complaint was within the scope of his or her duties. How competently or poorly a public official performs a certain task has no bearing on whether *that task* is one that is within the scope of his or her duties. "Conduct is within the scope of one's employment if it is the *type* of conduct which the employee is hired to perform," *Alfino*, 676 So. 2d at 449 (emphasis added)—not if the conduct satisfies applicable performance standards. The Kinnans have pointed to no authority supporting the proposition

that if the conduct *is* of the type a public official was hired to perform, it nonetheless falls outside of the scope of the official's duties if the quality of the official's performance falls short of a standard—such as legal sufficiency—governing the fulfillment of the official's obligations, whether that standard be informal or formally established by rule or statute. In fact, such a formulation of the concept of the scope of duties is incongruous with the broad language used by courts of this state to describe that scope. *See, e.g., Stephens*, 702 So. 2d at 523 ("While the defendants' respective job descriptions may not have required participation in these proceedings, the Florida Supreme Court has decided that the scope of an official's duties extends beyond enumerated, required tasks, and includes discretionary duties that are associated with a given position." (citing *Wardlow*, 403 So. 2d at 416)); *Cameron v. Jastremski*, 246 So. 3d 385, 388 (Fla. 4th DCA 2018) ("The term 'duties' is not confined to those things required of the officer, but rather extends to all matters which he is authorized to perform." (quoting *Cassell*, 964 So. 2d at 194)). If, under established Florida law, "the scope of an official's duties extends beyond enumerated, required tasks," *Stephens*, 702 So. 2d at 523, it cannot be that a task *explicitly enumerated* as an assigned duty nonetheless falls outside of the scope of duties simply because it was performed in a manner that fell short of a standard for the quality of its performance. Thus, even if the Kinnans could establish that the complaints at issue were not "legally sufficient"—as opposed to sufficiently pled but based on untruthful allegations—this would not bring the act of submitting a complaint outside the scope of the duties of the public officials seeking absolute immunity.

## III.

The record before the trial court conclusively demonstrated that Mr. Mills and Mr. Pumphrey were entitled to absolute immunity from the Kinnans' malicious prosecution claims, and the trial court departed from the essential requirements of law by denying them the immunity. *See id.* at 525. We therefore grant their petitions for writ of certiorari and quash the portion of the trial court's order that denied their motions for summary judgment.

Petitions granted; order quashed in part.

NORTHCUTT, J., Concurs.
KHOUZAM, J., Concurs specially.


KHOUZAM, Judge, Concurring specially.

I join fully in the majority opinion. I write only to address the rule limiting certiorari relief to cases where there has been a violation of a clearly established principle of law. *See Allstate Ins. v. Kaklamanos*, 843 So. 2d 885, 889 (Fla. 2003) ("A district court should exercise its discretion to grant certiorari review only when there has been a violation of a clearly established principle of law resulting in a miscarriage of justice." (citing *Ivey v. Allstate Ins.*, 774 So. 2d 679, 682 (Fla. 2000); *Haines City Cmty. Dev. v. Heggs*, 658 So. 2d 523, 528 (Fla. 1995)).

Although the existence of a clearly established law is a prerequisite to certiorari relief, the mere fact that a case involves a narrow issue of first impression does not necessarily preclude such relief where the legal principle at issue is sufficiently clear. *See, e.g., Orthopedic Ctr. of S. Fla. v. Sode*, 274 So. 3d 1127, 1128-29 (Fla. 4th DCA 2019) (granting certiorari with respect to "a matter of first impression" by applying

18

principles from decades-old precedent); *see also Kaklamanos*, 843 So. 2d at 889-90 (A court "too narrowly interpret[s] what constitutes 'clearly established law' for purposes of certiorari review" by denying relief due to the mere absence of appellate cases on the same policy endorsement.).

Here, no one has identified any appellate cases on the application of absolute immunity to malicious prosecution claims in this context. But, the majority illustrates in section II that Florida law is already well settled on the mechanics and scope of such immunity. I therefore believe that the law is sufficiently clearly established in this regard. *Cf. Ill. Union Ins. v. McGinley*, 50 Fla. L. Weekly D119, 2025 WL 21587 at *2 (Fla. 2d DCA Jan. 3, 2025) (granting prohibition despite the absence of any Florida decisions on the same question because "the resolution here is merely a straightforward application of longstanding legal principles").

───────────────────────────

Opinion subject to revision prior to official publication.